THE STATE ex rel. MARY IBA v. C. A. MOSMAN, Judge.

In Banc, December 17, 1910.

1. **CERTIORARI: Scope.** The scope of review of a record of a circuit court brought up to the Supreme Court by *certiorari,* is not limited entirely to the question of the circuit court's jurisdiction, but it may comprehend an error appearing on the face of the record which cannot be reached by appeal or writ of error.

2. ————: ————: **Removal of Cause to Federal Court.** *Certiorari* is the proper remedy to review an order of the State circuit court transferring a case to the Federal court. There is no appeal given by the statute in such case. Such an order is not a final judgment within the meaning of the statute, nor does it come under any class of special orders mentioned in that section from which an appeal is allowed. The plaintiff, if the order is sustained, has no appeal therefrom to the Supreme Court of either the State or the United States; and the only way in which a Federal court could be required to pass upon the point is by the filing of a motion in the Federal court, after it has been transferred there, to remand to the State court.

3. **TRANSFER OF CAUSES: To Federal Court: Diverse Citizenship.** Beyond prescribing what causes may be removed from a State to Federal court, and the proceedings therefor, Congress has not prescribed what the State court shall do when a motion to transfer is filed. But it has placed, not only the right but the fact of removal also, entirely independ-

ent of any order of judgment of the State court. The order of the State court transferring the cause, therefore, confers no jurisdiction on the Federal court; and, as the order of removal is a final disposal of the case without any judgment on the merits, if it is erroneous the party aggrieved must look to the appellate courts of the State alone for relief.

4. ———: ———: ———: **Question of Fact: Missouri Corporation.** Where a petition for removal on the ground of diversity of citizenship is filed, and that fact is denied, the State court has no authority to decide the question of fact, but the Federal court alone has such authority. The State court, however, has authority to decide a question of law arising out of the facts stated in the petition for removal and in the petition constituting the cause of action. But a statement of facts by plaintiff in his petition which he avers constitute defendant a Missouri corporation is no part of his cause of action for personal injuries and has no place in it, and defendant's petition to remove, alleging it is a citizen of Illinois, and not denying the facts stated by plaintiff in his petition which plaintiff says constitute it a Missouri corporation, does not so raise a question of law upon admitted facts as gives the State court authority to determine the question of fact on the issue of diverse citizenship.

5. ———: ———. **Separable Cause.** Where there is no separable cause of action against the defendants, one of whom is an admitted citizen of this State and the other an alleged citizen of another State, the case is not removable from the State to the Federal court. And where the petition charges that the death of the passenger was due to the negligence of the conductor and through him of the railroad company, it states a joint and not a separate cause of action against both. And the question of whether there is a separable controversy, so as to entitle the foreign citizen to remove, is to be determined by the cause of action stated in the plaintiffs petition, and is to be decided, in the first instance, by the State court. The petition in this case is reviewed and analyzed, and it is held that it does not state a cause of action against the foreign railroad company under Sec. 5425, R. S. 1909, and another against a conductor under Secs. 5426 and 5427, but, if any, one against both under the last two sections.

## Certiorari.

*John S. Boyer* and *Chas. C. Crow* for relator.

(1) The transactions shown in the record between the Missouri railroad companies and the Illinois com-

pany are tantamount to a consolidation, regardless of the name applied to such transaction, and by virtue of such consolidation the Chicago, Burlington & Quincy Railroad Company became a domestic corporation in respect to all of its acts in Missouri. Railroad v. Ashling, 160 Ill. 373; Shadford v. Railroad, 89 N. W. 960; Howell v. Lansing Co., 146 Mich. 450; Station v. Railroad, 144 N. C. 135; 1 Beach on Private Corporations, secs. 326, 327; Elliott on Railroads, secs. 26, 27, 28, 335, 339; 10 Cyc. 288, 289, 290, 293, 294, 295, 314; 6 Am. and Eng. Ency. Law, 801; Constitution of Missouri, art. 12, sec. 18; Thomas v. Railroad, 101 U. S. 83; Railroad v. Hunt, 20 Ind. 457; Railroad v. Meeh, 69 Fed. 753; Winn v. Railroad, 118 Fed. 55; Clark v. Barnard, 108 U. S. 436. So that it is immaterial whether the combination of all the property of all the constituent companies into one company was effected by means of a contract of consolidation or by means of a contract of purchase and sale. The result accomplished and the effect produced will be regarded by the courts rather than the name given the transaction by one of the parties thereto. The result was to place a new company in the State of Missouri, which could act only by virtue of the laws of this State and subject to the constitutional restriction named; and when sued for an act done within the State, it is sued and must answer as a domestic, and not as a foreign corporation. Railroad v. Meeh, 69 Fed. 753; Winn v. Railroad, 118 Fed. 55; Elliott on Railroads, secs. 26, 27, 28 and 339; Railroad v. Ashling, 160 Ill. 373; Clark v. Barnard, 108 U. S. 436. Railroad corporations organized by a State are different from private corporations in this, that a railroad is a public highway and owes a public duty to the people and to the State which it cannot deprive itself of the power to perform, except in the manner expressly authorized by the State. Thomas v. Railroad, 101 U. S. 83; Constitution of Missouri, art. 12, sec. 14; 10 Cyc. 290, 293, 1090; Elliott on Railroads, secs. 67, 68, 69, 70 and 322;

Mills v. Railroad, 41 N. J. Eq. 1. (2) There is no separable controversy. The defendants are properly joined under the Missouri statute. Both defendants are liable to plaintiff on account of one injury, the death of her husband, for which she is entitled by law to one satisfaction. The claim against each defendant is of common origin and is based on one general right. The fact that the company is liable under one section of the statute and O.'Phelan, its co-defendant, liable under another statute does not render the action several only, nor present a separable controversy as contemplated by the act of Congress in reference to removals. R. S. 1899; sec. 545. Plaintiff elected to sue two persons, both of whom were liable for a single tort. On the face of plaintiff's petition no right of removal of the suit appears, in the absence of which the order of the circuit court directing a removal was a judicial excess. R. S. 1899, sec. 545; Jordon v. Railroad, 202 Mo. 418; Casey v. Railroad, 205 Mo. 721; White v. Railroad, 202 Mo. 560; Hanson v. Neal, 215 Mo. 270; State ex rel. v. Woodson, 164 Mo. 440; Lanning v. Railroad, 196 Mo. 647; Railroad v. Thompson, 200 U. S. 206; Railroad v. Bohon, 200 U. S. 221; Railroad v. Carson, 194 U. S. 136.

*Culver, Phillip & Spencer* for respondent.

(1) (a) That the respondent, as judge of the Buchanan Circuit Court, had jurisdiction to hear and determine the sufficiency of the petition and bond for removal cannot be denied. In passing judgment thereon, the respondent was acting entirely within his authority. This conceded, it is absolutely immaterial, in the case at bar, whether the lower court committed error in granting the petition; for this court cannot on *certiorari* review errors committed in matters of which the lower court had jurisdiction. State ex rel. v. Shelton, 154 Mo. 691; State ex rel. v. Woodson, 161 Mo. 452; Fry v. Armstrong, 109 Mo. App. 110; State ex rel.

v. Lichta, 130 Mo. App. 290; State ex rel. v. Taylor, 224 Mo. 393; State ex rel. v. Edwards, 104 Mo. 126; State ex rel. v. Wooten, 139 Mo. App. 236; State ex rel. v. Edwards, 104 Mo. 126. (b) Relator alleges that, "your petitioner is wholly remediless in that she cannot appeal from the void and unlawful order or judgment made and entered by the circuit court," and that "she has no remedy whatever either to assert her rights in a court where justice is administered either of the first instance or to appeal so that said cause may be reviewed by the court." In this view of the law, relator is mistaken. If her case is not removable to the circuit court of the United States she has an ample and complete remedy. It is expressly provided by the Judiciary Act that if any cause is improperly removed into the circuit court of the United States, either party may file in that court a motion to remand. 18 U. S. St. at L. 472, c. 137, sec. 5 (U. S. Comp. St. 1901, p. 511); 34 Cyc. 1320. And if the circuit court of the United States erroneously refuses to remand the cause, the party aggrieved has his remedy to correct the error by appeal to, or writ of error from the United States Circuit Court of Appeals or the Supreme Court of the United States. Edrington v. Jefferson, 111 U. S. 770; Cates v. Allen, 149 U. S. 460; Powers v. Railroad, 169 U. S. 96; Barth v. Coler, 60 Fed. 468; Wabash v. Barbour, 73 Fed. 513. (2) The contention of relator that there is no diversity of citizenship is based upon two false premises: that the question of citizenship must be determined by the allegations of the plaintiff's petition, and not by the allegations of the petition for removal; and that the allegations of fact in the plaintiff's petition show that the plaintiff and defendant railroad company are citizens of the same State. If either of these premises be shown to be false plaintiff's contention fails. (a) To determine the citizenship of the parties the State court must look to the allegations of the petition for removal. It has no power to try issues

of fact arising upon the petition, but must accept the allegations therein as true; all issues of fact must be tried in the circuit court of the United States. Railroad v. Daughtry, 138 U. S. 302; Shane v. Railroad, 150 Fed. 801; Greer v. Railroad, 42 S. W. (Tex.) 1038; Railroad v. Cody, 166 U. S. 609; Powers v. Railroad, 65 Fed. 129; Carson v. Hyatt, 118 U. S. 279; 34 Cyc. 1305-1308; Railroad v. Hudgins, 33 S. E. (Ga.) 442. (b) Nor do the facts stated in plaintiff's petition show that plaintiff and defendant railroad are citizens of the same State. That the citizenship of the defendant was not affected by reason of its purchase of the Hannibal road (and others) is made perfectly apparent by the following authorities: Walters v. Railroad, 104 Fed. 377, 186 U. S. 479; Railroad v. Allison, 190 U. S. 326; Railroad v. Trust Co., 174 U. S. 552; Railroad v. James, 161 U. S. 564; Railroad v. Steele, 167 U. S. 659; Steamship Co. v. Kane, 170 U. S. 100; Stephens v. Railroad, 47 Fed. 530; Rece v. Newport News Co., 3 L. R. A. 572; Lee v. Atlantic Co., 150 Fed. 775. (3) The cause of action stated in the petition against defendant railroad is separable from the cause of action stated against the defendant Phelan. This is a death case, where the cause of action is given by statute; it must not be confused with personal injury suits bottomed on the responsibility of the master for the negligence of the servant at common law. In the latter class of cases the liability is joint, and it is settled that if the plaintiff elects to sue both the master and the servant, there is no separable controversy which will authorize a removal by the master where the servant and the plaintiff are citizens of the same state. Larning v. Railroad, 196 Mo. 647. But an action for damages for death does not exist at common law; it is the creature of statute, and the statute determines whether the cause of action is joint or separable. In the case at bar the cause of action is based on negligence in the operation of a train. Therefore the cause of action

against the railroad company is based on Sec. 2864, R. S. 1899 (amended). Casey v. Railroad, 205 Mo. 721. This section applies to the railroad only, it creates no liability whatever against the employee whose negligence may have caused the death. Railroad v. Stepp, 151 Fed. 908. The servant is liable if at all only under Sec. 2865, R. S. 1899 (as amended). The two causes of action are separate and the cause is removable. Railroad v. Stepp, 151 Fed. 908.

VALLIANT, J.—The record in this cause has come here in the return of a writ of *certiorari* issued out of this court to the circuit court of Buchanan county. The relator had filed in that court a suit against the Chicago, Burlington & Quincy Railroad Company and Thomas O'Phelan for damages for the death of her husband who she alleged in her petition was killed through the joint negligence of the two defendants. In her petition in that case the plaintiff stated that the Chicago, Burlington & Quincy Railroad Company was a corporation organized and incorporated under the laws of Illinois, owning and operating a railroad in Missouri, and the defendant O'Phelan was a conductor of one of its passenger trains in this State. The petition also stated that the St. Joseph & Des Moines Railroad Company, the Hannibal & St. Joseph Railroad Company and the Kansas City, St. Joseph and Council Bluffs Railroad Company were corporations organized under the laws of Missouri and that before the dates afterwards mentioned each owned and operated a railroad in this State; that in January, 1901, all those railroad corporations consolidated and transferred the titles to their roads to the Chicago, Burlington & Quincy Company and that company thereupon took possession of the several railroads owned by the Missouri corporations and has since owned and operated them. The petition sets out the deeds under which the properties were transferred and the agreements in relation

thereto, tending, as the plaintiff contends, to show that the several railroad companies thereby became consolidated and constituted one corporation and that one a Missouri corporation, and the conclusion is drawn that by that means the Chicago, Burlington and Quincy Railroad Company became a Missouri corporation. Then the petition went on to state the facts constituting her cause of action relating to the killing of her husband on one of those roads; we will recur to that feature of the petition later. The defendant O'Phelan filed his answer to the petition, a general denial. The defendant railroad company filed a petition to remove the cause to the United States Circuit Court, stating in its petition that it is an Illinois corporation and a citizen of Illinois and that the plaintiff and defendant O'Phelan are citizens of Missouri. Whilst not specifically denying the execution of the deeds set out in the plaintiff's petition, from which plaintiff draws the conclusion that it was a consolidation of the railroad companies and in legal effect made the Chicago, Burlington & Quincy a Missouri corporation, the petitioner denies that it ever so consolidated, and denies that it ever did anything whereby it became a Missouri corporation. The petition for removal then goes on to state the pleader's conclusions as to the cause or causes of action stated in the plaintiff's petition, and avers that if any cause of action is stated against the railroad company it is under section 2864, Revised Statutes 1899, in which its co-defendant O'Phelan is not involved, and if any cause of action is stated against O'Phelan it is under sections 2865 and 2866, in which the railroad company is not involved, and that therefore the cause of action against the railroad company is separable from that against O'Phelan and the railroad company has a right to have it removed to the Federal court. The petition was in due form and a proper bond, as the act of Congress requires, was tendered with it.

231 Sup.—31

The circuit court made an order, which was entered on the record, approving the bond and sustaining the application for removal; ordered that the cause be transferred to the circuit court of the United States, St. Joseph Division of the Western District of Missouri, and that the clerk transmit to that court copies of the pleadings, record, etc. Thereupon the plaintiff applied to this court for a writ of *certiorari* to bring the record here for review. Respondent, after sending up the record as the writ required, filed in this court a motion to quash the writ on the grounds, first, that the circuit court had jurisdiction to pass on the sufficiency of the petition and bond for removal; second, in sustaining the petition the court committed no error; third, whether it committed error or not the court had jurisdiction, and the error, if error there was, cannot be reviewed on *certiorari*.

I. The first and third grounds are substantially the same. The proposition is that on a writ of *certiorari* the court can only look into the record to discover if the trial court had jurisdiction of the subject and acted within its jurisdiction.

The scope of review of a record brought up by *certiorari* is not quite so narrow as there stated, that is, it is not limited entirely to a question of jurisdiction, but it may comprehend an error appearing on the face of the record which cannot be reached by appeal or writ of error. In State ex rel. v. Shelton, 154 Mo. 670, this court had before it a record brought up on *certiorari* which showed on its face that the trial court had jurisdiction, and the actions of that court complained of were such as could have been reviewed on writ of error or appeal, therefore this court quashed the writ of *certiorari*. There was in that case a learned discussion in the briefs of counsel of the office and scope of the writ of *certiorari,* and the opinion of the court was written by Judge BRACE, wherein on this point, l. c. 691, he said: "Now while *certiorari* is the

appropriate remedy where an inferior tribunal acts without jurisdiction or in excess of its jurisdiction, or when within its jurisdiction, but the action of such inferior tribunal cannot be reviewed on appeal or writ of error (citing a number of Missouri decisions); yet in this State the law is also well settled that it cannot be used as a substitute for appeal or writ of error; and that where such tribunal has jurisdiction and its action can be reviewed by appeal or writ of error, *certiorari* will not lie" (citing cases to that effect). That is the correct doctrine.

In the case before us the circuit court had jurisdiction to pass on the question of whether, on the showing made, the railroad company had the right to have the cause transferred to the Federal court, and if it had decided the question against the railroad company, retained jurisdiction of the cause and proceeded with it to final judgment, the railroad company could, by a timely bill of exceptions, have preserved the point and, if in the end the judgment had been against it, the ruling of the circuit court on the question of the right of removal could, on appeal or writ of error, have been reviewed in this court; and if this court affirmed the ruling of the circuit court on the question of removal, the cause could be taken to the Supreme Court of the United States. [Moon on Rem. of Causes, sec. 180.]

But when the State court makes an order sustaining the application for removal it is equivalent to a refusal to take any further action in the case, it puts the plaintiff out of court, that is, out of that court, yet there is no final judgment. Will an appeal lie from such order? That question must be answered by our State statute. Whether an appeal lies to the State Supreme Court from an order of the State Circuit Court depends entirely on what the State statute says on the subject. No action that the State court can take can either withhold or confer jurisdiction on the Federal court. Under the Act of Congress the filing of

the petition and bond for removal, if they are sufficient, transfers the cause from the State to the Federal court; no order of the State court is necessary. [Black's Dillon on Rem., sec. 190.] If the petition and bond are not sufficient, an order of the State court directing the transfer neither deprives the State court of its jurisdiction nor confers jurisdiction on the Federal court; in such case the only party injured is the one who brought his suit in the State court.

The Act of Congress provides that he may go into the Federal court and move to have the cause remanded, and if his motion is overruled and he loses his suit in the long run he may have the action of the Federal court reviewed on appeal to the United States Supreme Court. But that is not the forum in which he brought his suit and, unless it is a removable cause, he is entitled to have his cause tried in the State court in the first instance, and not be sent all around the Federal courts before coming back to the State court. Whether it is a removable cause or not is a question in the first instance for the State circuit court, to the extent at least of determining whether the State court will retain jurisdiction, and on that point the party has a right to have the Supreme Court of the State review the ruling of the State circuit court and correct its error, if error there be. Congress has power under the Federal Constitution to declare that certain causes may be removed from a State court to a Federal court and prescribe the proceeding by which the removal can be effected and that power Congress has exercised. But beyond prescribing what causes may be removed and the proceeding therefor Congress has not undertaken to prescribe what the State courts shall do; on the contrary, it has carefully avoided anything like a direction to the State court, and has placed not only the right of removal, but the fact of removal also entirely independent of any order or judgment of the State court. If therefore the State court should make an or-

der removing the cause, such order is not made in obedience to any Act of Congress, but only to show on the court's own records what disposal has been made of the case. If the party opposing the removal sees fit to follow the case to the Federal court and move to have it remanded, and if his motion is overruled and the cause goes on to final judgment, and the question finally comes before the Supreme Court of the United States, it would so come, not on the order of the State court directing the removal, but on the action of the Federal court overruling the motion to remand. There is therefore no appeal to the United States Supreme Court from the order of the State court removing the cause; indeed, there is no appeal in any case from an order or judgment of a *nisi prius* State court to the Supreme Court of the United States. But the order of removal is a final disposal of the case without any judgment on its merits, and if it is erroneous the party aggrieved must look to the appellate courts of the State alone for relief, and if it is a case cognizable only in the Supreme Court then it is to the Supreme Court he must look, and to the State laws. Has the aggrieved party any remedy by appeal or writ of error under our law? We must look for an answer to that question to section 2038, Revised Statutes 1909. It is there provided that an appeal will lie from a final judgment of the trial court, but this order of removal is not a final judgment within the meaning of that statute, nor does it come under the class of any of the special orders mentioned in that section from which an appeal is allowed. There is no appeal given by the statute from such an order. A writ of error brings up only a final judgment. [Sec. 2054, R. S. 1909; Padgett v. Smith, 205 Mo. 122.] Therefore the aggrieved party has no remedy either by appeal or writ of error, yet the error, if error it be, is shown on the face of the record. In such case the writ of *certiorari* is the proper remedy. By that writ the record only is brought before this court, and on its face

it must be judged. We hold that *certiorari* is the proper remedy in this case.

II. Counsel for relators contend that the facts stated in the petition for the plaintiff constitute the Chicago, Burlington & Quincy Railroad Company a Missouri corporation, and that since those facts are not denied by the railroad company in its petition to remove, it stands confessing that it is a Missouri corporation, if the legal effect of those facts makes it so.

When a petition for removal is filed on the ground of diversity of citizenship and that fact is denied, the State court has no authority to decide the question, but the Federal court alone has such authority. A law-writer on this subject has said: "For example, if any question is raised as to the actual citizenship of either of the parties, when the removability of the case depends upon the diversity of their citizenship, this issue is triable only in the Federal court; the State court must assume that the facts as to citizenship are as they appear in the record and as they are alleged in the petition for removal; and it cannot receive and consider any evidence to the contrary." [Black's Dillon on Removal, sec. 191.] But in the same section, after referring to apparent conflict between the authorities, the author says: "But they may be nearly all reconciled, and the true rules evolved, by paying due attention to the difference between questions of fact and questions of law, and to the nature of the questions which present themselves to the State court and the Federal court, respectively, upon an application for removal." The conclusion of the author is that if the petition for removal presents a question of law affecting the right of removal, the State court has authority to decide such question.

The learned counsel who drew the petition in the case sought to be removed seem to have had in mind the idea last above expressed, and therefore they put into that petition statements of facts the legal effect of

which they construe as constituting the Chicago, Burlington & Quincy Railroad Company a Missouri corporation. But a defendant's right to have the question of his citizenship in such case passed on by the Federal court cannot be anticipated and defeated in that way. If there had been no statement of such facts in the plaintiff's petition, but plaintiff had waited until the petition for removal had been filed and had then filed an answer to that petition stating those facts as constituting a denial of the statement in the petition for removal as to the citizenship of the parties, such answer would have been in effect a denial of the allegation of citizenship and a tender of an issue of fact on that point, which issue, as above shown, could not be raised in the State court. But whilst the State court cannot hear evidence and try that issue as a question of fact, that is, as to the truth of the statement of facts from which the conclusion is drawn, it has authority to decide a question of law arising out of the record, that is, out of the statement of facts in the petition for removal and the statement of facts constituting the cause of action in the plaintiff's petition in the cause sought to be removed, and if, taken together, those statements show as a matter of law that there is no diversity of citizenship, the State court should deny the application for removal.

In their brief, counsel for the relator say that the defendant in its petition for removal did not deny the facts pleaded in the plaintiff's petition relating to the alleged consolidation, and that therefore they stand admitted, and hence only a question of law is presented. But those statements were out of place in the plaintiff's petition, therefore the defendant did not have to deny them. The plaintiff in her petition had the right to state only facts constituting her cause of action; all else is surplusage. Questions relating to the right of removal do not arise until a petition for removal is filed and then if the showing made by the petition for re-

moval, taken in connection with the cause of action stated in the plaintiff's petition, raise a question of law only, it is the duty of the State court to decide it, but in so doing the State court must take the statements in the petition for removal as true and can consider only those facts stated in the plaintiff's petition which constitute her cause of action; if facts contra to those stated in the petition for removal are to be pleaded, they must be presented to the Federal court.

Leaving out of view the facts stated in the plaintiff's petition, which it is contended constitute the defendant railroad company a Missouri corporation, the record did not present to the State court on the subject of citizenship a mere question of law which it was the province of that court to decide. Therefore, on the face of the record the circuit court was justified in assuming for the time being that the Chicago, Burlington & Quincy Railroad Company was an Illinois corporation and a citizen of that State.

III. One other point remains to be considered. Is there in the suit of Mary Iba against this railroad company and the individual defendant, the conductor, a separable controversy? In its petition for removal the railroad company says that if the petition states any cause of action against it, it is under section 2864, Revised Statutes 1899, in which the conductor is not involved, and that if there is any cause of action stated against the conductor it is under sections 2865 and 2866, in which the railroad company is not concerned. If that is the correct interpretation of the plaintiff's petition the cause was removable on the separable controversy theory, otherwise not.

The plaintiff's petition states that the defendant corporation owned and operated a railroad in this State, that her husband purchased a ticket for his passage from Easton, a station on the road, to St. Joseph; that the train on which he was to go arrived at Easton on its way to St. Joseph, and her husband was about to

board the train, and was in the act of doing so, but before he could do so in safety, "Thomas O'Phelan, the conductor of said train, in charge thereof, and one of the agents, servants and employees of defendant, carelessly and negligently signaled and required said train to move before plaintiff's husband had time to board same, knowing that plaintiff's husband was in the act of boarding said train and knowing, or by the exercise of ordinary care could have known, that plaintiff's husband was in a place of danger at the time said defendant, Thomas O'Phelan, ordered and signaled said train to move. Plaintiff states that on the 13th day of October, 1909, and at the time before referred to, while defendant railroad company's train was standing at the depot platform at the town of Easton, the defendant, Thomas O'Phelan, who was then and there the conductor in charge of the said train, carelessly, negligently and unlawfully signaled to the engineer of the said train to start and caused the said train to move and to start away from the said depot platform while there was a large freight truck standing within six inches of the edge of the said depot platform and very near to the side of the coach of the said train, and near the baggage coach of said train ahead, and in front of the passenger coach of the train, and of the place where passengers were received on said train, and at the time the said conductor caused the said train to move, the depot master at said place had not had time to unload all of the freight from said truck into the baggage car of said train and remove said truck from its said position near and adjacent to the side of the said train, and that the depot master had just moved the last piece of freight into the door of the said baggage car, and was still standing on top of the said truck and had not had time to move the said truck, when the said conductor caused the said train to start, and that the position of the said truck on the said platform was such as to render it dangerous for passengers boarding

said train.    Plaintiff states that her said husband,
Frederick B. Iba, had boarded the said train and was
standing up on the steps of the passenger coach of
said train, holding with his hand to the handrail of
said coach.''

Thus far the petition states facts showing a negli-
gent movement of the train, and if within the body of
the petition can be found a statement of facts showing
that the death of the plaintiff's husband was caused by
that negligence, then we must conclude that the peti-
tion states a cause of action against the corporation
under section 2864, Revised Statutes 1899 (now sec.
5425, R. S. 1909, amended), and if so the individual de-
fendant, the conductor, is not liable in that cause of
action, but the railroad company alone is liable.

But there are no facts stated in the petition going
to show that the negligent movement of the train alone
caused the death.    On the contrary the facts stated
show that the plaintiff's husband was in a compara-
tively safe place on the step of the car, holding the
handrail, in the act of going on, would not have been
hurt by the moving of the train and would not have
come in contact with the freight truck which was the
cause of his death, if he had been left to go on.    What
brought the body of the plaintiff's husband in contact
with the freight truck was the alleged negligent act of
the conductor in taking hold of him and pulling him
backward until his body was brought in line with the
truck.    The truck being six inches from the edge of
the platform, the plaintiff's husband must have been
pulled backward at least six inches plus the distance,
whatever that may be, between the edge of the plat-
form and the outer line of the cars in the train.    The
averment in the petition is clear that the accident was
caused by the act of the conductor taking hold of the
plaintiff's husband and pulling him into the line of
danger, otherwise the alleged negligent movement of

the train would have caused no injury. The language of the petition on this point is as follows:

"That at said time the defendant, Thomas O'Phelan, conductor of said train, was standing on the depot platform at said place and had caused the said train to begin to move and that while plaintiff's said husband was standing on the lower step of the said passenger coach, the conductor called out to him in a loud voice to get off of the train and moved toward this plaintiff's said husband and took hold of him and pulled him backward so as to cause his body to sway backward off of the steps of the said coach, and that the said conductor pulled this plaintiff's husband backward from the said train and interfered with and prevented this plaintiff's said husband from going up the steps of the said coach and inside of the said train, by his words and acts aforesaid. That the said defendant, Thomas O'Phelan, conductor of said train, also pushed this plaintiff's said husband forward into the steps of the said train and caused his body to sway forward and then backward, while the plaintiff's said husband was in the position aforesaid. That immediately thereafter, the said defendant, Thomas O'Phelan, conductor of the said train, and agent, servant and employee of defendant as above stated, pulled this plaintiff's said husband backward and forward as above stated and caused his body to sway forward and backward, while in the position above stated, that the body of this plaintiff's husband struck one end of the large freight truck above mentioned, while standing in the place and position above described, and that by striking the end of the said truck, the body of this plaintiff's said husband was again knocked forward and caused to sway and strike the said truck again, and thereby and on account of the actions of the said conductor, and the defendant, Chicago, Burlington & Quincy Railroad Company, and on account of their joint carelessness and negligence as herein specifically stated and de-

tailed, this plaintiff's said husband was caused to lose his balance upon the steps of the said train and to fall from the coach of the said train between the said depot platform and the said train, upon the ground and under the wheels of said train, where this plaintiff's said husband was dragged and crushed under the wheels of the said train, and on said railroad tracks, from which he instantly died.''

The petition states no cause of action under section 2864, Revised Statutes 1899, but does state a joint cause of action against the railroad company and defendant O'Phelan, the conductor, therefore there is no ''separable controversy'' in the case. There is but one cause of action, and that is against both defendants, and it is under sections 2865 and 2866, Revised Statutes 1899, now sections 5426 and 5427, Revised Statutes 1909. There is nothing in what we now say that is in conflict with what was said in Casey v. Railway, 205 Mo. 721, to which we are referred. It was in that case held that if the death was caused by the negligent operation of the defendant's instrument of transportation, the corporation was liable under section 2864, Revised Statutes 1899, but if it was caused by defendant's negligence otherwise, either its own negligence or that of its servant, it was liable under sections 2865 and 2866, now sections 5426 and 5427, Revised Statutes 1909. Under those two sections the master is liable for the negligent act of his servant and the servant is also liable for his own negligent act.

The question of whether there is a separable controversy so as to entitle the party to remove, must be determined by the cause of action stated in the plaintiff's petition. [Black's Dillon on Rem., sec. 141.] That question in the first instance must be decided by the State court. [Id., sec. 191.] ''If the State court decides that the removal papers, in connection with the record, fail to show that the cause is removable, it will

deny the application for removal and proceed with the trial of the cause.'' Idem.

The railroad's application for the removal of this cause is based (besides diverse citizenship) on the theory that in the cause of action stated in the plaintiff's petition there is, as to it, a separable controversy, and that is the interpretation the circuit court must have given to the plaintiff's petition, but that is a misconception. That is the only error we find in the record, but that is vital. There being no separable controversy the cause is not removable.

It follows that the circuit court committed error in making the order transferring the cause. Respondent's motion therefore to quash the writ of *certiorari* is overruled, and the order of the circuit court of date January 29, 1910, sustaining the petition for removal and transferring the cause is quashed, but the costs are not adjudged against respondent. All concur.