In re Estate of LOUIS H. BRINCKWIRTH et al., Minors; JOHN G. GRONE et al., Appellants, v. HARRY TROLL, Public Administrator.

**Division One, June 2, 1916.**

1. **APPEAL: From Probate Court: Refusal to Appoint Curator.** An appeal lies from an order of the probate court refusing to revoke the authority of the public administrator, who, as *ex officio* public guardian and curator, has taken charge of the

In re Estate of Brinckwirth.

estates of minors, and refusing to appoint their nearest kin as curators. Such an order is a final order and judgment of the probate court, and Sec. 468, R. S. 1909, authorizes an appeal in such case.

2. **PUBLIC ADMINISTRATOR: Taking Charge of Minor's Estate: Not a Judicial Act.** The public administrator does not have concurrent jurisdiction with the probate court to determine who shall take charge of a minor's estate, and a filing of a notice by him that he has taken such charge does not forestall appointment by the court. The Constitution (Sec. 34, art. 6) gave the probate court "jurisdiction over the appointment of guardians and curators of minors," and Sec. 464, R. S. 1909, says that "the public administrator shall be *ex officio* public guardian and shall have charge of all estates of minors that may, by the order of the probate court, be placed in his charge."

3. ———: ———: **Subject to Revocation.** The authority of the public administrator to take charge of the estates of minors whose parents are both dead, is simply provisional, and subject to termination by the probate court.

4. ———: ———: **Rights of Relatives: Statutory Provisions.** The provisions of Sec. 403, R. S. 1909, that the father, or if the father be dead, or there be no lawful father, then the mother, shall be the natural guardian of the minors and the curator of their estates, does not exclude all others from the category of preferences, and does not place relatives, such as uncles, on the same footing as strangers. That statute did not repeal the common law relating to the selection of those to be charged with the nurture and care of orphaned children and their estates, but left that law, as to the preference to be given relatives, standing almost in its entirety.

5. ———: ———: **Filing of Notice: Nearest of Kin: Uncles.** All other qualifications being equal, and no specific reason existing to the contrary, the nearest relatives of the minors whose parents are both dead are entitled to preference in the selection of a permanent curator of their estates; and where uncles, or other nearest relatives, have filed timely application to be appointed, it should be considered by the court in all respects as if the public administrator had not filed notice that he, as *ex officio* public curator, had taken charge of their estates.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer,* Judge.

Reversed and remanded *(with directions).*

*Schnurmacher & Rassieur* for appellant.

(1) Where a minor under fourteen has lost both father and mother, and no guardian or curator has been appointed by will, the next of kin should be appointed by the probate court on behalf of such minor. R. S. 1909, sec. 403; 15 Am. & Eng. Ency. Law, pp. 39, 44; Morehause v. Cooke, Hopk. Ch. 226. (2) The welfare of the minor is the paramount consideration in determining the selection of his guardian and curator. 21 Cyc. 32; Woerner on Guardianship, pp. 55, 98, 113; Hollingsworth v. Jeffries, 121 Mo. App. 660. (3) The office of public administrator is an auxiliary to the general administration laws of the State, to protect estates subject to peril or loss for lack of a competent interested person, and was not intended merely to provide fees for the incumbent. Tittmann v. Edwards, 27 Mo. App. 492.

*Marshall & Henderson* for respondent.

(1) The circuit court had no jurisdiction. (a) No appeal lies from the appointment of a curator by the probate court, or from the refusal of the probate court to revoke such appointment and to appoint some one else as such curator. (b) The appellants, Grone and Griesedieck, have no financial or other interest or right in this case, and no right to maintain this proceeding or to take an appeal from the judgment of the probate court. (2) It was the duty of respondant, as ex officio public guardian and curator (Sec. 299, R. S. 1909) to take charge of the estates of these minors, under paragraph 7 of Sec. 302, R. S. 1909, because such minors were under fourteen years old, and their parents were dead, and no one was authorized to take care of and manage their estates, and his powers continued under Sec. 304, R. S. 1909, until the estates were finally settled. (3) The motion to revoke Troll's powers does not state facts sufficient to constitute a cause of action.

BROWN, C.—This is a proceeding begun by motion in the probate court for the city of St. Louis by John G. Grone and Henry Griesedieck, Jr., uncles of Louis H. Brinckwirth, Henry T. Brinckwirth, and Josephine Brinckwirth, minors, against Harry Troll, public administrator of the city of St. Louis, to remove the latter from the administration, as curator, of the estates of said minors and revoke his authority therefor and for the appointment of the applicants, as next of kin, guardians and curators of the persons and estates of the minors. No question is made upon the sufficiency of the motion to present the case made.

Upon trial in the probate court judgment was given against these appellants on grounds stated by the court in a memorandum filed, as follows:

"I have overruled the motion, as I cannot see any legal grounds for revoking the authority of the public administrator as curator of these children; whether the action should have been taken by the public administrator in view of the fact that these children have relatives qualified to be their guardians and curators, is a question which the court, as a court, does not feel called upon to decide, the proposition being simply a proposition of law, and I think the public administrator, having taken charge of that estate under the circumstances, there is no legal ground for revoking the authority."

The applicants appealed to the circuit court, where after a motion to dismiss the appeal had been filed and overruled, the matter was tried on the following mutual admissions:

"1st. That Josephine Brinckwirth departed this life, a resident of the city of St. Louis, in the State of Missouri, on, to-wit, March 29, 1911.

"2nd. That at the time of her said decease, the said Josephine Brinckwirth was a widow, and was the mother of said Louis Brinckwirth, aged about twelve years and one month; Henry Brinckwirth,

In re Estate of Brinckwirth.

aged about eight years and three months; and Jose-
phine Brinckwirth, aged about five years and four
months, and that said children and each of them were,
at the time of the death of their said mother, and
now are, residents of said city of St. Louis.

"3rd. That said three minor children resided
with their mother until about the 19th day of March,
1911, when by reason of the mother's severe illness,
they were taken charge of by petitioner John G.
Grone, who took to his residence said two minors,
Louis and Henry Brinckwirth, and who placed said
minor Josephine Brinckwirth in the residence of his
brother Herman Grone, said Herman Grone residing
in close proximity to the residence of said petitioner
John G. Grone; and said children have been in such
custody since said 19th day of March, 1911, and still
are in such custody at this time.

"4th. That petitioner John G. Grone is the uncle
of said three minor children, their mother, the said
Josephine Brinckwirth, deceased, having been his sis-
ter, and that petitioner Henry Griesedieck, Jr., is also
an uncle of said minor children.

"5th. That on, to-wit, March 30, 1911, the day
succeeding the death of the mother of said minors and
being the day preceding her funeral, Harry Troll,
public administrator of the city of St. Louis, filed in
the probate court the following notice:

" 'State of Missouri  }
City of St. Louis.      } ss.

" 'To the Hon. Charles W. Holtcamp, Judge of
the Probate Court of the City of St. Louis:

" 'Notice is hereby given to all persons interested
in the estate of
Louis H. Brinckwirth, Jr., aged 11 years....months;
Henry T. Brinckwirth, aged 9 years.........months;
Josephine Brinckwirth, aged 5 years........months;

minor children of Louis and Josephine Brinckwirth, late of the city of St. Louis, deceased, that I, the undersigned public administrator and *ex officio* public guardian and curator, within and for the city aforesaid, have this day taken charge of the estates of said minor children, Louis, Henry and Josephine Brinckwirth, for the purpose of administering the same as their curator, their parents being dead, and they having no one authorized by law to take care of and manage their estates.

" 'Given under my hand this 30th day of March, 1911.

HARRY TROLL,
" 'Public Administrator and Ex-Officio,
" 'Public Guardian and Curator.'

"6th.   That they are willing and anxious as next of kin to be appointed guardians of the persons and estates of the minor children, and would not make any charges for their services as guardians or curators."

Thereupon the court heard arguments on the motion and took the matter under submission until the next (June, 1912) term,. and on August 19, 1912, rendered its judgment overruling the motion of appellants to revoke the letters of curatorship or the authority of said Harry Troll, affirmed the action of the probate court and directed its judgment to be certified to the probate court of the city of St. Louis, and the cause has come by appeal to this court.

I.   The respondent denies that an appeal from the probate court lies in this case.   This contention is founded principally upon certain provisions of the

Appeal.   statute applicable to the administration of the estates of deceased . persons which respondent claims are applicable, and certain decisions of this court and the courts of appeals construing them.

Section 463, Revised Statutes 1909, under which this appeal is taken, is a part of article seventeen of chapter two entitled "Guardians and Curators of Minors." It is as follows: "Appeals shall be allowed from any final order or judgment of the probate court *under this article*, at any time during the term, or. within six months thereafter, in like manner and with the same effect as appeals are allowed in cases of administration of the estates of deceased persons." It will be observed that no attempt is made to enumerate the matters in which an appeal is authorized *under that article*, but it applies equally to "any final order or judgment," and that the reference to cases of administration of estates prescribes only the practice and effect of the appeal and not to the class of cases in which it shall be allowed. The only requirement is that it shall be from a final order or judgment. We can only inquire here whether or not the order of the probate court comes within that description. Of that there can be no doubt, nor is its finality as to the matter before the court questioned by the appellant. It is not necessary to inquire in that connection whether the proceeding is well taken in the sense that the motion shows the appellant to be entitled to any relief, for that is the very question which is to be determined by the appellate court if the matter is properly before it.

This same question was before the Kansas City Court of Appeals in State ex rel. v. Reynolds, 121 Mo. App. 699. It held, under the same statute we have quoted, that mandamus should issue to the probate court to compel the allowance of an appeal in a proceeding in that court by the mother of minors over fourteen years old against the public administrator to have the latter, who had taken charge of the minors' estate as curator under an order of the court, removed, and the nominee of the minors appointed in his place. The court had, by its order of record, dis-

approved the choice of the minors and ordered the public administrator as *ex officio* public guardian to take the estate into his custody, and the order from which the court had refused to allow an appeal was the overruling of a motion to set that appointment aside and to appoint the nominee. The court, reviewing the case of State ex rel. Grover v. Fowler, 108 Mo. 465, held that the mandamus should go. The case last cited is the leading case relied on by the respondent. It was an appeal from an order overruling the application of Mrs. Grover as administratrix of her father's estate, and appointing her brother, Mr. Cockrell. In holding that no appeal lay from the order this court said:

"The fact that the Legislature provided specifically for an appeal from an order revoking letters of administration, but made no mention of an appeal from an order appointing an administrator, raises a strong inference that it was not the intention to allow an appeal in the last-named cases."

That case was especially approved in Flick v. Schenk, 212 Mo. 275, in which the same question was the only one involved.

These cases construe the section which is now section 289, Revised Statutes 1909, and a part of the general administration law of the State. It contains the only provisions authorizing appeals from the probate court in cases arising under the general administration law, to which it is expressly confined by its terms. It enumerates fifteen classes of cases from which appeals from the probate courts may be taken. The ninth and fifteenth of these are as follows: "Ninth, on all orders revoking letters testamentary or of administration . . . ; fifteenth, and in all other cases where there shall be a decision of any matter arising under the provisions of articles I to XIII." This includes the article relating to "Public Administrators," but does *not* include the article relating to

"Guardians and Curators of Minors," which is article XVII. The effect of this section was the only issue in State ex rel. v. Fowler, and Flick v. Schenk, supra. We still adhere to our opinions in those cases, but they fall far short of justifying us in disregarding the meaning, expressed too plainly to admit of construction, of section 463, which allows appeals from all final orders and judgments of the probate court under that article. The case is properly here.

II. The object of this proceeding is two fold: (1) It seeks to have the respondent removed from the administration of the estates of these minors in which the record implies he is now engaged and (2) to have the uncles, appellants in this case, appointed curators in his stead. They say that whatever authority the respondent has or claims by virtue of having voluntarily taken charge of their estate or otherwise, as *ex officio* public guardian and curator, is subject to their right and improvidently assumed, and that the estates should be taken out of his hands.

The respondent is self-appointed to the curatorship of the estates of these children under the provisions of section 302, Revised Statutes 1909, and claims the right to continue in charge under section 304. Section 302 provides that it shall be his duty to take into his charge and custody: "Sixth, the persons of all minors under the age of fourteen years, whose parents are dead, and who have no legal guardian;" and, "seventh, the estates of all minors whose parents are dead, or, if living, refuse or neglect to qualify as curator, or, having qualified, have been removed, or are from any cause incompetent to act as such curator, and who have no one authorized by law to take care of and manage their estate."

**Public Administrator as Public Guardian of Minor's Estates.**

The father of these children had been dead about two months when their mother died. The next day after her death, and during the preparations for her funeral, the respondent prepared and filed in the probate court the notice which we have copied in the foregoing statement, and which he describes as taking charge and custody of the estates of the children, and the effect of which is one of the questions in this case. Although the statutory authority we have quoted is much more simple and absolute in giving him the right to the custody of their persons, he was content with their property. The promptness with which he discharged that portion of what he conceived to be his duty impresses one of normal sensibility with the eery consciousness of a Presence with piercing eyes and invisible wings, hovering over the house of, sorrow, watching and waiting; and when death enters, and while the watchers yet weep, settling noiselessly down upon his repast. If the Presence is Law it is our duty to recognize and protect it in its acts in that capacity. There is nothing in the record that shows that at the time this proceeding was begun the respondent had gone farther than to file this notice. Bearing in mind the statutory provision we have quoted, and under which he acted, we pass to section 305, the first sentence of which is as follows: ''It shall be the duty of every public administrator immediately upon taking charge of any estate, except those of which, he shall have taken charge under the order of the probate court for the purpose of administering the same, to file a notice of the fact in the office of the clerk of the probate court.'' It then provides that upon a failure to file this notice a penalty shall be imposed. It is impossible to extract from this section any other meaning than that the notice must be given after he has taken charge of the estate and that the penalty is imposed if he does not give the notice *of having done so*. It is impossible, by any construction or interpre-

tation, that the notice is the thing of which he must give notice, or that the penalty is imposed until he does something of which he should give notice. It is not suggested that he had meddled with the property of which he claims to be the curator. The record contains no hint that the nearest relatives of these children in whose homes they were being nurtured were not as competent in every respect to care for their estates as for their persons. The probate judge recognized this when he filed the memorandum stating: ''Whether the action should have been taken by the public administrator in view of the fact that these children have relatives qualified to be their guardians and curators, is a question which the court, as a court, does not feel called upon to decide, the proposition being simply a proposition of law.'' Expressing the same thought in other words, he held that by giving this notice the public administrator had appointed himself the curator of the estates of these children and that, as a proposition of law, he had no right to interfere with what the respondent designates in his brief as his ''concurrent jurisdiction.'' He says, in fact, in his argument, that he and the probate court have ''concurrent jurisdiction'' in the matter, and the first in the ''race'' to act excludes the jurisdiction of the other. This is a fair statement of the real question in this case.

The Constitution of the State (article 3) provides that: ''The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted.'' In pursuance of

the definite policy and command expressed in this article it created the judicial department, including the probate court, to which it gave "jurisdiction over . . . the appointment of guardians and curators of minors." [Sec. 34, art. 6.] Having this provision in mind, the Legislature enacted section 304, which we copy (with our own italics) as follows: "When a public administrator *has been appointed* to take charge of an estate, he shall continue the administration until finally settled, unless he resigns, dies, is removed for cause, or is discharged in the ordinary course of law as the administrator." And also section 464, as follows: "The public administrator shall be *ex officio* public guardian and shall have charge of all estates of minors that may, *by the order of the probate court,* be placed in his charge, and in such cases he shall be known and designated as public guardian." It evidently had the extent and limitation of its own powers in view in framing both these sections, and was careful not to exceed the one nor disregard the other. While it could create an administrative officer to ferret out and take into his possession property which needed the protection of the probate court, it could not invest him with authority which the Constitution had expressly declared to be judicial, and had vested in a judicial office of its own creation. It therefore made no attempt to confer upon this officer other than provisional powers to be exercised until such time as the court should be called upon to exercise its constitutional jurisdiction. It was so called upon by the filing of this motion, and held that it had no authority to interfere with what it erroneously conceived to be a legislative appointment, and on that ground alone refused to further consider the propriety of the application.

268 Mo.—7

III.   This holding amounted to a declaration that when the children became orphans by the double calamity of the death of both their parents within a period of two months, all other ties of blood were severed and they became the wards of the public administrator whenever he chose to take possession of their persons and property, for, as we have seen, the law under which he assumed to act is even more stringent with respect to the former than the latter.

**Uncles and Nearest Relatives as Minor's Curators.**

The respondent admits in his argument here that under both the common and civil law they would still be entitled to all the advantages that might accrue to them from motives of natural affection and family pride in their nurture and the care of their resources, but contends that all this has been changed in this State so absolutely and completely that their nearest relatives have no right to appear in court in their behalf for their protection.   He builds this theory on section 403, which provides that the father, and if the father be dead, or there be no lawful father, then the mother, shall be the natural guardian and curator of their children.   He says that the recognition of these as natural guardians excludes all others from the category of preferences, and places relatives on the same footing as strangers with reference to the nurture and care of orphaned children and their estates; and that this recognition of the natural rights of parents repeals the whole body of the common law relating to the selection of those to be charged with such duties with respect to children who have no parents.   The fact is that this latter question has been left standing almost entirely upon the common law principles applicable, and one of the most salutary of these is that which gives preference, all other elements being equal, to the near relatives of the children.   An excellent reason for this is found in a rule which applies to the

selection of all trustees the performance of whose duties affect those having adverse interests in the trust. It is presumed in such cases that such a trustee would more zealously guard the interest of his relative that the interest of a stranger. The law recognizes the same incentive in a guardian, and applies the doctrine embodied in the homely proverb, "Blood will tell."

The common law rule, which is in force in this State except in so far as it is changed by the terms of our statutes, which are founded upon it, is very plainly expressed in 15 American and English Encyclopedia of Law, at page 39, as follows:

"In making the selection, if there are no good reasons for varying the natural order, the father (except, of course, where the appointment is being made because of his own unfitness), will have the preference, then the mother, then the nearest relatives. There is no preference as between paternal and maternal relatives. But the welfare of the infant being the primary consideration, the court, in appointing a guardian of his estate, is not restricted to the relatives. It may appoint a stranger who is shown to be competent. Other things being equal, however, a relative will always be preferred to a stranger."

For the reasons given we hold that the authority of the public administrator, under the circumstances of this case, was simply provisional, and subject to termination by the action of the court appointing the curator for the estates of these minors; that all other qualifications being equal, and no specific reason existing to the contrary, the nearest relatives of the minors are entitled to preference in the selection of a permanent curator; that the application of appellants was timely and should have been considered by the court in all respects as if the public administrator had not acted in the matter; and that the court, in the exercise of a sound discretion should have made

such appointment as would best serve the interest of the minors, subject to the principles we have stated.

For these reasons the judgment of the circuit court for the city of St. Louis will be reversed and the cause remanded.

And it having been made to appear to this court that during the pendency of this appeal the appellant Henry Griesedieck, Jr., has died, and Louis H. Brinckwirth has attained the age of fourteen years and chosen curators who have been duly appointed by the probate court, it is ordered that the circuit court certify the entire record in this case to the said probate court, which is directed to proceed with the hearing and determination of the issues involved in the application of appellants and to appoint a curator or curators for the estate of each of said minors who have not yet arrived at the age of fourteen, having regard in their selection to the rules and principles herein stated. The costs of this appeal are adjudged against respondent.

*Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.