STATE of Missouri, at the relation of Bernard W. KASSEN and Dorothy Kassen, Relators,

v.

Hon. Paul CARVER, Special Judge, Eighth Judicial Circuit of Missouri, Respondent.

STATE of Missouri, at the relation of Keith EARICKSON and Mary Jane Earickson, Relators,

v.

Hon. Paul CARVER, Special Judge, Eighth Judicial Circuit of Missouri, Respondent.

Nos. 23605, 23606.

Kansas City Court of Appeals.

Missouri.

March 5, 1962.

Jack C. Jones, John Franken, Carrollton, Hendren & Andrae, John E. Burruss, Jr., Jefferson City, for relators.

Christian Stipp, Carrollton, and Shughart, Thomson, Stark & Kilroy, Harry P. Thomson, Jr., John R. Caslavka, Kansas City, for respondent.

MAUGHMER, Commissioner.

Relators, by certiorari, seek review of two habeas corpus proceedings which divested them of child custody. Since the two cases are identical they are consolidated. This court has not formally issued the writs of certiorari "ordering up" the records. By agreement the records on the matters involved, from both the circuit and probate courts, have been filed here. The issues have been orally argued and written

briefs have been filed. Therefore the technical procedure of issuing the writs has become unnecessary.

A clearer understanding of the facts may be had if they are unfolded chronologically. John Kirby Kassen and Janette Kassen, husband and wife, residents of Carroll County, Missouri and the natural parents of John Kirby, Kimberly Ruth, Pamela and Amy Kassen, all under 14 years of age, were killed in an automobile accident on September 4, 1961. Immediately after the death of their parents John Kirby and Kimberly Ruth Kassen entered the home of their paternal aunt and her husband, the relators, Keith and Mary Jane Earickson. Pamela and Amy Kassen at the same time entered the home of their paternal uncle and his wife, the relators Bernard W. and Dorothy Kassen. In their return to the writ of habeas corpus, relators assert said children entered their homes with the consent of their maternal grandfather D. E. Quaintance and these parties had agreed that a family conference would be held with the probate judge on September 20, 1961, "to attempt to agree as to who would act as guardians for said children".

John Kirby Kassen, eldest of the four minors, remained in the Earickson home until about September 16, 1961, when he went on a week-end visit to the home of his grandfather, D. E. Quaintance. The boy has remained there ever since and his custody is not involved in the present controversy. The other three minor children remained with their paternal uncles and aunts, the relators, until November 24, 1961, when their custody was placed with the said D. E. Quaintance, by order of respondent Special Judge, in the habeas corpus judgments. Relators' applications for certiorari followed.

On September 20, 1961, the maternal grandfather D. E. Quaintance filed in the Probate Court of Carroll County his formal application praying for the appointment of himself as guardian of the person and estate of these four minors. In this application he alleged that the children were pres-

ently in the legal custody of no one, but John Kirby was in the actual custody of applicant, Kimberly Ruth was in the home of Keith Earickson, while Pamela and Amy were in the home of Bernard Kassen, and all living at Norborne, Carroll County, Missouri. The application alleged further that both parents were deceased and the minors were possessed of an estate of an estimated value of $60,000.

On the same date upon which the application was made—September 20, 1961—the probate court entered an order appointing D. E. Quaintance, guardian of the person and of the estate of each of said minors, fixed his bond at $100,000 and ordered him "to take charge of the person and estate of said minors". The bond was made and approved on September 20, 1961. The court order recites a finding that the minors are residents of Carroll County, and that the applicant "is a suitable person for such appointment". Relators have invited our attention to and we here note the provision of Section 475.045, subd. 3, V.A.M.S., namely: "If no appointment is made under subsection 1," (a parent), "the court shall appoint as guardian of a minor *the most suitable person* who is willing to serve * * *" (Italics supplied.)

None of relators, who at the time of the hearing, had actual custody of three of the minors, was present at the hearing nor were they served with or given any notice of the proposed hearing for appointment of guardian, although all were residents of and present in Carroll County.

On September 23, 1961, three days after the guardianship appointment, relators having learned of the appointment, filed their petition in the probate court, asking that such appointment be set aside as not having been lawfully granted, and praying appointment of themselves as guardians. On October 4, 1961, this petition was taken up by the probate court and "taken under advisement".

On October 9, 1961, the said D. E. Quaintance filed in the Circuit Court of Carroll

County, two applications for writs of habeas corpus, asking that relators, the actual custodians, be required to surrender and deliver the persons of the three minor children to him "as the duly appointed guardian of the person and estate" of said minors. The two writs were issued. A return reciting the facts substantially as we have related them was made. Quaintance filed an answer to the return setting forth his appointment as guardian and asserting that by reason thereof he was entitled to custody, which relators refused to relinquish, and moved for judgment on the pleadings.

At about this time the resident circuit judge, having become disqualified, the respondent, Hon. Paul Carver, Judge, Eighth Judicial Circuit of Missouri, was enlisted to serve as Special Judge. Judge Carver heard the habeas corpus matters and "took them under advisement". Thereafter, on October 16, 1961 and before any order had been made as to the habeas corpus, the probate court denied relators' petition to revoke the order of September 20, appointing Quaintance as guardian and dismissed the petition. On the same day relators filed their application and affidavit for appeal from both the order appointing the guardian and from the order refusing to revoke such appointment. On this same day, October 16th, the probate court entered its finding that relators were "interested persons", were "aggrieved" by said judgments, fixed appeal bond in the sum of $200 (which was made and approved) and granted an appeal on both matters to the circuit court. While these appeals were pending in the circuit court, respondent Special Judge, on November 24, 1961, sustained the motion for judgment on the pleadings in the habeas corpus proceedings and commanded relators to deliver the custody of the three minors forthwith to the petitioner Quaintance. Relators immediately complied and surrendered custody.

On December 15, 1961, relators filed in this court the instant petitions for writs of certiorari. Therein they ask this court to "determine the legality and reasonableness" of the habeas corpus writs and orders. There is no suggestion in any of these proceedings that these children have not been receiving or likely will not receive good, sufficient and proper care in either the homes of relators or in the home of their grandfather, Mr. Quaintance.

▆▆▆▆ In Missouri the functions of the writ of certiorari have not been the subject of statutory description or definition. Therefore, we begin with the well-established principle that the writ of certiorari performs the same office in this jurisdiction as at common law. State ex rel. Shaw State Bank v. Pfeffle, 220 Mo.App. 676, 293 S.W. 512, 515; State ex rel. Iba v. Mosman, 231 Mo. 474, 133 S.W. 38; State ex rel. Tarkio-Squaw Levee District of Holt County v. Crouse, Mo., 319 S.W.2d 660.

"The writ is applicable where the court to which it is directed either has no jurisdiction, or acts in excess or abuse of its jurisdiction, or where there is no remedy by appeal or writ of error". State ex rel. Lunsford et al. v. Landon, 304 Mo. 654, 265 S.W. 529, 531. A habeas corpus proceeding is not appealable but may be reviewed by certiorari. State ex rel. Stewart v. Blair, 357 Mo. 287, 208 S.W.2d 268.

It was stated by Judge Bennick for the St. Louis Court of Appeals in State ex rel. Shaw State Bank v. Pfeffle, supra: "It is not a writ of right, but issues only on special cause shown to the court to which application therefor is made; and such court is vested with a sound judicial discretion, dependent upon the established legal principles applicable to the particular facts of the case, either to grant the writ or to refuse it, *as substantial justice may seem to require*". (Italics added.)

▆▆▆▆ We find this statement in Bailey on Habeas Corpus, Section 148: "The party applying for the writ must affirmatively show that he is entitled to the custody of the child, whether it be a parent, individual, or a corporation organized for charitable purposes".

In State ex rel. White v. Swink, 241 Mo. App. 1048, 256 S.W.2d 825, the court said: "Again, in In re Stuart, 138 Wash. 59, 244 P. 116, loc. cit. 117, it was said: 'In all cases and texts that have been cited and that we have examined, it is uniformly held that a writ of habeas corpus will only be granted, in the case of an infant, where the applicant shows a *prima facie legal right* to the custody of the infant.' This case further held that the grandparents of a child have no natural or inherent right to the custody of the child". (Italics added.)

▮ It is not the function of this court under certiorari to pass on the merits of the dispute nor may we interfere even though the respondent judge may have reached a conclusion different from the one we would have reached. The determination we must make is this—did the respondent judge have jurisdiction to make and under the law was he authorized to enter the judgment which he did enter? Or stated another way, was there no jurisdiction to divest relators of custody and give custody to Mr. Quaintance, or were such acts in excess of or in abuse of jurisdiction, and does the doing of substantial justice require this court to interfere?

Respondent contends we may only consider the records of the circuit court habeas corpus suits and may not look also to the probate court records. We rule that since Mr. Quaintance in his habeas corpus pleadings based his right to custody upon his appointment as guardian and since he had judgment on the pleadings, it is apparent that such appointment was the primary basis for the circuit court judgment and we may, therefore, also consider the record herein as made by the probate court.

It is respondent's position that (1) no appeal lies from the appointment of a guardian of a minor by the probate court and (2) even if such an order is legally appealable, such appeal with supersedeas bond will not operate as a stay so as to prevent the guardian from assuming custody of the minor and control of his estate. Relators say that such an appointment without notice to the actual custodians is a denial of due process and it was impossible for the probate court at an ex parte hearing to determine what person was, and hence to be able to appoint "the most suitable person who is willing to serve" as required by Section 475.045, V.A.M.S. It is further relators' position that an appeal lies from the appointment of a guardian by a probate court and that the appeal, coupled with a supersedeas bond, operates as a stay and precludes such appointee from taking custody until the appeal is terminated.

Article V, Section 16, Mo.Const.1945, V.A.M.S., provides: "There shall be a probate court in each county with jurisdiction of all matters pertaining to probate business, * * * the appointment of guardians and curators of minors * * *". Section 472.020, V.A.M.S. incorporates the same phraseology in a statutory enactment.

Letters of guardianship may be issued under Section 475.030, subd. 3(1), V.A.M.S., "Where a minor has no parent living;" and by Section 475.035, subd. 1, the venue is fixed as "In the county in this state where the minor * * * is domiciled;".

▮ In 39 C.J.S. Guardian and Ward § 8, page 19, this statement is made: "Probate courts or courts exercising probate jurisdiction have original and general jurisdiction to appoint guardians of minors; and under the constitutional or statutory provisions of some states, they have exclusive jurisdiction; * * *". The Missouri constitutional and statutory requirements place "jurisdiction of all matters pertaining to probate business" with the probate courts, and then lists "the appointment of guardians and curators of minors" as one area of this probate business. It is our opinion, therefore, that in Missouri the various probate courts have exclusive, original jurisdiction to appoint general guardians of minors.

In the matter before us Mr. Quaintance, in his application filed with the probate court for appointment of himself as guard-

ian, stated, among other things, the names and addresses of relators and described them as the persons having actual custody of the minor children. This is in accordance with the provision of the statute (475.-060, subd. (6), V.A.M.S.).

After the application was filed the next step in the orderly development of the proceeding by the probate court would be considering and securing proper service. Section 475.070, V.A.M.S. covers this procedure as follows:

"1. Before appointing a guardian of a minor, notice of the petition therefor shall be served upon the following unless they have signed such petition or have waived notice thereof:

"(1) The minor, if over fourteen years of age;

"(2) The parents of the minor;

"(3) If directed by the court

"(a) Any person who has been appointed guardian *or any person having care and custody of the minor;*

"(b) Any department, bureau or agency of the United States or of this state or any political subdivision thereof, which makes or awards compensation, pension, insurance or other allowance for the benefit of the ward's estate;

"(c) Any department, bureau or agency of this state or any political subdivision thereof or any charitable organization of this state, which may be charged with the supervision, control or custody of the minor.

"2. If the minor is over fourteen years of age, there shall be personal service upon him if personal service can be had. Service on others may be had in accordance with section 472.100, RSMo. The court for good cause shown may reduce the number of days of notice".

The latter part of this statutory provision seems to contemplate service upon all of the persons or agencies mentioned under a, b, and c, and directs personal service if possible be had on the minor, but authorizes service by mail or publication upon all others. (Sec. 472.100, V.A.M.S.). Strictly construed this statute positively requires notice to parents and to the minor if over 14 years of age, and makes it discretionary with the court as to whether or not the actual custodians (and others mentioned) must be served with notice.

We quote from 39 C.J.S. Guardian and Ward § 23, at page 40: "It is very generally required by statute that notice of the application be given to the next of kin or persons having custody of the infant, especially in cases where there are no parents entitled to notice, and even in the absence of a statutory requirement notice to relatives is eminently proper".

In Daugherty v. Nelson, Mo.App., 234 S.W.2d 353, 362, this court said: "It has been held that a parent cannot be deprived of the right of custody of a minor child in a guardianship proceeding without notice and an opportunity to be heard, even though the statute authorizing the removal of the parent as a natural guardian does not expressly provide for notice and a hearing, for such notice is required by the due process clause in both state and federal constitutions. (citing cases)".

Respondent invites our attention to that part of Section 475.020, V.A.M.S., reading: "The provisions of chapter 472, RSMo, unless therein restricted to decedents' estates, apply to guardianships". And to Section 472.010(15) of such chapter that " 'Interested persons' mean heirs, devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered". Respondent deduces from these provisions that relators are not such "Interested persons" as to be entitled to an appeal. We do not agree. We think the statute quoted is limited to estates of decedents. In our opinion, relators, uncles and aunts and the persons with actual custody were interested

parties within the statutory appeal restrictions. The probate court later on, in its recorded action approving and allowing their appeal, so described them.

One of the most treasured and zealously guarded fundamentals of Anglo-Saxon law is that anyone has the right to have notice and an opportunity to be heard before an adverse decision is made in a controversy in which he has a direct interest. Ex parte proceedings are not favored. In this case when the grandfather filed his petition for appointment as guardian, it affirmatively appeared therefrom that relators were close relatives, had actual custody of the minors and resided in Carroll County. Under these circumstances it would have been appropriate and we think fairness required that they be notified and be given an opportunity to be heard on the guardianship question, rather than to be summarily passed over in an ex parte proceeding, taken up instanter and with no hearing and no opportunity to be heard. Such procedure is imprudent and appears to be arbitrary. We think it might in some instances, for example where the actual custodians had been caring for the children for a period of years, be struck down as a denial of due process.

However, in the case before us, the children had been with relators only about sixteen days when the petition was filed and, according to relators, a family meeting had tentatively been agreed upon for the purpose of discussing, and if possible, amicably agreeing upon a disposition, which in turn would be presented to the probate court for approval. Under all these circumstances we shall not rule the probate court judgment to be void because it was to some extent arbitrary, unreasonable and approaching denial of due process. In this connection we observe that the prevailing practice in the vast majority of the probate courts of Missouri in similar situations is to give notice to the actual custodians.

Since grandfather Quaintance predicated his right to custody upon his appointment as guardian, since he had no other legal claim and since the circuit court based its decision thereon, the validity of such appointment and the effect of the appeal therefrom with an appeal bond, is germane to the issues in this case. We have already ruled that the probate court possessed jurisdiction to make the appointment and it is not void for want of due process or for other reasons.

In Missouri, the right of review by appeal is statutory and unless the appeal is authorized by statute it must be dismissed. Section 512.010, V.A.M.S.; Kallash v. Kuelker, Mo.App., 347 S.W.2d 467; Walker v. Thompson, Mo., 338 S.W.2d 114. However, the statutes authorizing appeals shall be liberally construed so as to allow appeals. In State ex rel. Jones v. Davis, 240 Mo.App. 411, 216 S.W.2d 155, 158, this court said: "The above statutes concerning appeals from the probate court are to be liberally construed as the law favors the right of appeal. State ex rel. Goodloe v. Wurdeman, 286 Mo. 153, 159, 227 S.W. 64". And in In re Dugan's Estate, Mo.App., 309 S.W.2d 137, 143: "One of the cardinal principles, however, which pervades and hovers over all canons of construction is that statutes providing for appeal are to receive a liberal construction".

Our Statute, Circuit Courts, Judges and Jurisdiction; Section 478.070, V.A.M.S., declares:

"The circuit courts in the respective counties in which they may be held shall have power and jurisdiction as follows: * * *

"(4) Appellate jurisdiction from the judgment and orders of county courts, probate courts and magistrates, in all cases not expressly prohibited by law, and shall possess a superintending control over them, and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind".

Section 472.160, V.A.M.S., Probate Code, General Provisions; lists 14 specific

appealable orders (none of which are here applicable) and then No. 15, as follows: "In all other cases where there is a final order or judgment of the probate court under this Code except orders admitting to or rejecting wills from probate". This last phrase beginning with the word "except" was added in 1957. The purpose of such amendment "was to exclude appeals from orders admitting or rejecting will— because the code provides for review by suit to contest or establish will". Judge Leslie A. Welch, Kansas City, 13 J. of Mo. Bar, 148.

Section 472.230, V.A.M.S., Probate Code, provides that upon the filing of the appeal affidavit, bond and approval thereof by the probate court, the appeal shall operate as a supersedeas. Section 472.250, V.A.M.S. provides that when an appeal is taken from the probate court, the circuit court shall try the matter de novo. In re Mills' Estate, 349 Mo. 611, 162 S.W.2d 807.

■ It is apparently conceded by all parties that an appeal lies from a probate court order refusing to remove an administrator or guardian, or refusing to revoke an appointment of either. There is no doubt but that this is the law. In re Scott's Estate, 237 Mo.App. 1260, 173 S.W.2d 115, holds an appeal lies from denial of an application to remove an administrator. Therein the court quoted from the Supreme Court opinion, In re McMenamy's Guardianship, 307 Mo. 98, 122, 270 S.W. 662, 669, as follows: "Since the opinion of Gantt, J., in Coleman's Case, supra [Coleman v. Farrar, 112 Mo. 54, 20 S.W. 441], the right to have an appeal (unless it is expressly prohibited by law) from any final judgment or order made by a probate court has never been denied by this court, but, on the other hand, fully sustained * * *". An appeal lies from refusal to revoke letters of administration. In re Dugan's Estate, Mo.App., 309 S.W.2d 137, or from refusal to remove a curator, In re Brinckwirth's Estate, 268 Mo. 86, 186 S.W. 1048.

Before the present probate code became effective there were at least two court of appeals cases, holding that no appeal lies from a probate court appointment of a curator for a minor. (Looney v. Browning, 112 Mo.App. 195, 86 S.W. 564, and Smith v. Young, 136 Mo.App. 65, 117 S.W. 628). These decisions were based on a holding— (1) the statutes then existing covering appeals in guardianship cases were in pari materia with the statutes covering administrators and that since those latter statutes specifically authorized appeals from an order refusing to remove or revoke, none existed as to the original appointment, and (2) the appointment of a temporary curator pending appeal was not authorized and the estate might suffer without management, hence a rule of necessity—no appeal. These cases were specifically overruled by the same court. Ex parte Smith, 197 Mo.App. 200, 193 S.W. 288. There the maternal grandmother, by habeas corpus, sought to take custody from the father. She was armed with a probate court judgment finding the father to be unfit and appointing herself as guardian. In effect at that time was Section 463, R.S.Mo., 1909, allowing appeals from "any final order or judgment of the probate court",—almost identical with our present statute. The court said: "That the finding and judgment of the probate court here involved is a 'final order or judgment' of that court, within the meaning of section 463, supra, we have no doubt".

If an appeal does not lie from the appointment but only from the order refusing to revoke, a trial de novo may still be had in the circuit court but pending determination of the appeal, rightful custody would rest with the appointee, who would be the duly appointed and qualified guardian. On the other hand, if the original order of appointment is appealable, and the appeal, coupled with the supersedeas bond, stays the appointment and suspends the right of the appointee to act until confirmed on appeal, then he may not be entitled to custody. This is relators' chief contention.

39 C.J.S. Guardian and Ward § 56, page 86, tells us: "A lawfully appointed general guardian or guardian of the person is entitled to custody of the ward, * * *", and in 39 C.J.S. Habeas Corpus § 46, page 586: "An order appointing a guardian for an infant is conclusive of the right of such guardian to the infant's custody, until reversed by a direct proceeding, and it cannot be assailed in a collateral way by habeas corpus proceedings, except on the ground of want of jurisdiction in the court to make the order of appointment."

Most lawsuits involve primarily the interests of the contestants. Here the actual participants in the arena are the grandfather on one side, and the uncles and aunts on the other, contesting for the right, privilege and responsibility of managing the substantial estates of these minors and having custody of their persons. But the interests most deeply involved are the interests of the four children. It is their estate and their welfare that is at stake. It is their well-being that should be the chief concern of the courts.

Manifestly the estates of minors ought to have management and their custody ought to be lodged with someone. Determination of these questions should not be permitted to drift along, held in abeyance to abide the outcome of prolonged litigation. Our laws in some situations, have recognized and provided for these problems. If a minor child has lost its parents, has no estate and is not being cared for, such neglected child may be made a ward of the juvenile court and its custody placed with a proper person. Our laws vest with the juvenile court (circuit court) sufficient authority to act summarily and promptly in such instances. If a child's home has been broken and its parents are involved in a pending divorce suit, the circuit court may place temporary custody even before trial of the divorce case. Our laws are not so clear where the children have an estate but no parents. Counsel for relators suggest that in such situations the public administrator is empowered to act and is

the proper person to take over both the estate and custody. Section 473.743, V.A. M.S. does generally allow such procedure. However, we know that public administrators are not situated so as to be able to take such children into their homes. Such officials are not blood relatives and would, of necessity, place the minors in either private foster homes or with some public charitable agency. In our case the public administrator has not even made an effort to act. This alternative is out. The choice in this case is between relators and Mr. Quaintance.

Does an appeal lie from the order of a probate court appointing a guardian for a minor under 14 years of age whose parents are dead, and if it does, is such guardian, nevertheless, entitled to take custody from uncles and aunts, pending determination of such appeal, or should an appellate court under certiorari deny such right, when there is no charge that such guardian is not a suitable person? We have concluded after long and careful consideration that whether an appeal does or does not lie from the original appointment, would make no difference in determining this case. For this reason and because the question would be more appropriately presented on an appeal than by certiorari, we shall by-pass it and assume for the purposes of this case that such an appeal does lie. Furthermore, for the same reasons, we shall not here discuss in detail the important question as to the effect of the supersedeas bond and whether it neutralizes a guardianship appointment so as to stop such appointee from acting as guardian and assuming custody of the person and control of the ward's estate pending appeal.

Only a parent, actual or adoptive, has a natural legal right to custody of a child. In those instances where small children are left with no parents but with a sizeable estate surely some court is empowered to act and to appoint a guardian or temporary custodian with authority to care for them personally pending appeal. Circuit courts have inherent power to ap-

point receivers and guardians ad litem. But because our legislature has vested exclusive, original jurisdiction in the probate courts to appoint guardians for minors, we believe that those courts are the proper courts to make such appointments, subject, however, to whatever right of appeal exists under our laws. We think further that such appointment should be immediately effective insofar as custody is concerned as against a person who has no legal right of custody. Relators at no time had any right, legal, natural or otherwise, except such as accrued to them by reason of their having actual custody. This would be sufficient, in the absence of a showing the child was not receiving proper care, to defeat an attempt by another person who likewise had no legal or prima facie legal right. A person *may* be entitled to custody if his claim is greater than the other claimant even though it is not a complete and finally established claim. It is somewhat similar to the status of a finder of lost property. He is entitled to possession until the true owner appears and his right is finally established. It is like a contested election. The winner on the face of the returns and certified as such, holds the office with all of its powers and emoluments until the contest is finally decided.

We do not believe that such a prima facie legal claim would necessarily be effective until confirmed on appeal as against another person who not only had actual custody but also a legal claim to custody, as for example, (1) The holder of a juvenile court judgment granting custody, or (2) Judgment of the circuit court awarding custody in a divorce case, or (3) A father or mother. Under these examples requiring such persons to surrender custody would be, in effect, to deprive them of a legal and recognized right in advance of final adjudication. In our particular case relators have no legal right to the custody of the children. They had only actual custody and that admittedly on a temporary basis pending the outcome of a family conference with the probate judge. To hold

that under such circumstances relators were entitled to retain custody against the claim of grandfather Quaintance, armed with his appointment, would be to hold that a claim based on bare actual custody alone should prevail over a claim bottomed upon an appointment as guardian by a proper probate court. We cannot so rule and this is so, even though the Quaintance appointment might not be confirmed on appeal. We cannot hold that respondents' orders in the habeas corpus proceedings were in excess of jurisdiction, or amounted to an abuse of jurisdiction, or are in derogation of substantial justice. Those orders will not therefore be disturbed in these proceedings.

The writs of certiorari are quashed.

SPERRY, C., not sitting.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.