In the Matter of the Appointment of Stanley Shortridge as Guardian of Susan E. Parks, Stanley Shortridge, Respondent, v. Henry P. Lay, Appellant.—84 S. W. (2d) 983.

Kansas City Court of Appeals. June 24, 1935.

*H. T. Williams* for guardian.

*Henry P. Lay, Ross E. Feaster* and *James A. Parks* for appellant.

ON MOTION OF GUARDIAN TO DISMISS APPEAL.

PER CURIAM:—The appeal herein grows out of the appointment of Stanley Shortridge as guardian of Susan E. Parks, a person of unsound mind, by the Probate County of Pettis County, Missouri, on December 4, 1934. After the appointment and qualification of Shortridge as such guardian, Henry P. Lay, a nephew of said ward residing in Benton County, Missouri, on the 14th day of December, 1934, appealed the matter of said appointment to the Circuit Court of Pettis County, and a transcript of the probate court proceedings was filed in the office of the clerk of said circuit court on December 21, 1934, and the matter was heard by the court on March 1, 1935. At the hearing in the circuit court, Mr. H. T. Williams appeared for the informant, and the record recites that Messrs. Ross E. Feaster, James A. Parks and Henry P. Lay appeared for "the defendant estate." It further recites that "by consent of all parties" a jury was waived. Before the hearing of the evidence was begun, a request by Mr. Lay was made of the court to appoint Ross E. Feaster and James A. Parks, as attorneys for Susan E. Parks. The record then recites that a motion was presented (the nature of the motion not being stated, whether it was a motion to dismiss the appeal, or some other motion, is not stated; but from a later statement in the record, we think it was the motion to dismiss) and afterward the record recites that it was "argued and was by the court taken under advisement with instructions to proceed with the evidence on the merits." And thereupon the evidence in support of the information was heard.

It appears from the exhibits, filed with and attached to the record, that written notice to Susan E. Parks was properly served upon her, stating that an information had been filed by Mrs. Catherine Barrow of Pettis County alleging that "you are a person of unsound mind and incapable of managing your affairs and asking that a guardian be appointed to take charge of your person and estate;" that a copy of which was attached, and notifying her that a hearing would be had on December 4, 1934, at the court house in Sedalia, at which time and place she was required to appear; that she was entitled to appear and be assisted by counsel, and if she does not appear, and is not represented, the court will appoint same.

The information, duly sworn to, stated that informant is, and had been, for many years a resident of Pettis County, Missouri; that she has rendered services, care and attention as nurse, extending for a period of over three years, to and for Susan E. Parks; that she, said Susan E. Parks, is a person of unsound mind and incapable of managing her affairs; that "she has personal property, securities and assets, the exact amount and nature whereof your affiant does:

not know. That she also has a large amount of land. That her property is liable to be wasted and lost to her and her creditors." Wherefore informant prayed for an inquiry into said matters, and if it be found that said person is of unsound mind and incapable of managing her affairs, "that the court appoint a suitable person guardian of the person and estate of said Miss Susan E. Parks."

On the day appointed, December 4, 1934, the court, upon return of sheriff showing service of a true copy of said information on the said Susan E. Parks on November 28, 1934, the court, being advised that the mental and physical condition of said Susan E. Parks is such that it is impracticable for her to appear in person at said hearing into her sanity; and that she "is a woman past the age of ninety years, very feeble, and in bad health, does order said hearing to proceed without the attendance of the said Susan E. Parks."

And it appearing to the court that said Susan E. Parks has no attorney, the court appoints William A. Collins, a licensed and practicing attorney of Pettis County Bar to represent said Susan E. Parks at said hearing and said Collins appears in court and accepts said appointment.

And thereupon the attorney for informant and the attorney for Susan E. Parks waive a jury, and consent that the hearing be had before the court.

And after hearing the evidence of witnesses as to the condition of mind of the said Susan E. Parks, the court finds that—

"The said Susan E. Parks is a person of unsound mind, and incapable of managing her affairs. The testimony including that given by Dr. T. A. Blackmore, Dr. Robert Jennings, Mrs. Anna Barrow and Mrs. Catherine Barrow.

"It is therefore adjudged by the court that the said Susan E. Parks is a person of unsound mind and incapable of managing her affairs.

"And it appearing to the court that Susan E. Parks who has by this court been declared to be a person of unsound mind and incapable of managing her affairs, is a resident of the County of Pettis and State of Missouri; and that the said Susan E. Parks is entitled to the possession of property in this State, and that unless a guardian be appointed to receive, receipt for, manage and preserve said property for the said Susan E. Parks, the same is liable to waste, injury or loss, and said Susan E. Parks suffer great damages; and the court being fully advised in the premises and being satisfied that Stanley Shortridge is a suitable person, doth make, constitute and appoint him guardian of the person and the estate of said Susan E. Parks."

Thereupon letters of guardianship were issued to Stanley Shortridge on December 4, 1934.

On January 19, 1935, said Shortridge filed bond in the sum of $5000 with three sureties thereon, as guardian of "Miss Susan E.

Parks of unsound mind'' which bond was approved by the Probate Court of Pettis County on January 22, 1935.

On the 14th day of December, 1934, an appeal from the probate to the Circuit Court of Pettis County was sought in an application which recites that it is made by ''Susan E. Parks, by Henry P. Lay, her attorney, nephew and relative'' and which was signed ''Susan E. Parks by Henry P. Lay, her attorney and nephew.'' And an appeal bond in the sum of $500 was filed, signed ''Susan E. Parks by Henry P. Lay, her attorney'' and by said Lay individually and two other securities, and the probate court, by an order reciting the appearance of ''Susan E. Parks, by Henry P. Lay, her attorney and nephew'' and the filing of the appeal bond in the sum of $500 by ''Susan E. Parks by her attorney Henry P. Lay'' the probate court approved said bond and allowed the appeal.

At the hearing in the circuit court, evidence of witnesses in support of the information charging Miss Susan E. Parks to be of unsound mind, was heard, in the course of which Mr. Lay admitted that Miss Susan E. Parks ''owns real and personal property probably in excess of $50,000. That is only an estimate—we cannot tell what things are worth now.'' It was further shown that she had money on deposit in a bank in St. Louis, also in a bank at Windsor; there was also evidence that Mrs. Barrow was with her at her home for the last three years looking after her and that during said time certain of her relatives never came there and the others one or more times but not for more than ten minutes at a time, and did not go in the house; another was there for about an hour and a half one Saturday afternoon; that Miss Parks is in need of constant attendance; that it would not have been practical to have brought her before the court at the hearing, that if she had been brought. ''she would simply have gotten frantic, as she gets frantic and goes wild.''

Much other evidence was given tending to show her unsoundness of mind. There was also evidence of her owning a building in Warsaw and in other places, the care and management of which she does not attend to herself and does not have anyone to attend to for her. She exercises no management whatever other those places; and also has a large amount of land. She has a tract of sixty acres on which she lives, but she does not know what contracts she makes or what rent she receives, and last of all, when the tenant came to see her with a contract to sign for the year 1935, she did not know who he was.

A physician who examined and treated her for the last three years and testified as a witness in the probate court as to her mental condition, and who had seen her, possibly a week before the hearing in the circuit court, testified that her mental condition is unsound, that

she is not capable of managing her affairs and that she is afflicted with "senile dementia;" other physicians testified that in their opinion she was incompetent from "a senile condition—old age."

No evidence was offered contrary to, or disputing, the evidence in support of the charged incompetency or unsoundness of mind. An attempt, or offer of evidence, was made to show that Miss Parks' relatives (residing in other counties) had tried to be attentive, but were not advised as to the information; such offer being made "so as to clear themselves of negligence on their part." The court however ruled that such was not material to the issue, and refused to admit it; and then took up the motion to dismiss, which it had taken under advisement until after the hearing. At the close of the argument on the motion to dismiss the appeal, the court sustained the motion and dismissed said appeal, the circuit court saying that, in his view, the objections could not, in a hearing on the unsoundness of mind (which in reality is not contested) attach to that so as to make appealable only a matter as to the appointment of Mr. Shortridge as guardian.

From this holding and ruling, Mr. Lay has appealed.

Transcript on appeal to this court was filed March 18, 1935. On April 3, 1935, guardian, Stanley Shortridge, filed motion to dismiss appeal, together with suggestions in support of said motion. Thereafter attorneys for appellant Lay requested, and the court granted, thirty days in which to file suggestions in opposition to said motion to dismiss. Said suggestions in opposition to the motion to dismiss were filed on May 10, 1935, and on May 11, 1935, respondent Shortridge filed reply thereto.

As briefs on both sides have been filed on the motion to dismiss, and as it appears from the facts shown in the record that Miss Parks is concededly an aged lady over ninety years of age, of unsound mind and incapable of managing her affairs, and it is certain that she will unquestionably suffer loss if her property is not cared for, without needless delay; and also that she needs personal care and attention, it appears expedient and, in fact, imperatively necessary, for the court to consider and pass on the motion to dismiss instead of doing, as is sometimes done in a case of ordinary appeal, namely, "take the motion with the case," which would mean a delay of the matter until the next October term.

This is all the more important when it is remembered that there is nothing more remaining in the case to be considered, or to be ordered and disposed of by us, after the motion to dismiss is disposed of, no matter which way the motion be decided. If the motion to dismiss is sustained, then Shortridge, the guardian, will be free at once to proceed to the care of the person and estate of the ward. If the motion be overruled, then that, in effect, will dispose of the

entire matter so far as this court is concerned, for the court, in that event, could only remand the case to Pettis County for the probate court to appoint a different guardian (if a different selection be required) and the present guardian would, in that case, be freed from further obligation to act.

We should perhaps frankly state that the foregoing consideration, as well as those following, of themselves are sufficient to raise great doubt that any amendment to the statute, stated in *general* terms, and not *specifically* saying that an appeal from an order of the probate court appointing a guardian is authorized under the more liberal view held regarding appeals, can be construed to have that meaning. For instance, in Section 284, Article 12, Revised Statutes of Missouri, 1929 (1 Mo. St. Ann., p. 177), which says: "Appeals shall be allowed from the probate court to the circuit court, in the following cases" and then names fourteen, in none of which can appeals from the appointment of a guardian be considered. The allowance of such an appeal cannot be found in the fifteenth clause which says: "And in all other cases where there shall be a *final* decision of any matter arising under the provisions of articles 1 to 13, inclusive, of this chapter." First, because the appointment of a guardian is not a *final* decision, and second, because in the next words of the fifteenth clause, the statute says: "And the right of appeal herein provided for shall extend to any heir, devisee, legatee, creditor or other person having an interest in the estate under administration." And this calls to mind that the appellant in the matter now before us, is not one legally interested in the matter thus sought to be appealed. The person whose sanity and ability to manage her affairs was inquired into by the probate court does not appeal. The appeal was sought by someone other than she; and always her name appears signed, not by her, but by said other person described as a relative.

At the hearing in the circuit court, the evidence of Miss Parks' unsoundness of mind and incapacity to manage her affairs, was not only sufficiently clear and convincing, but was so impliedly recognized and conceded by those who claimed to be representing her, that they offered no testimony in any way controverting the charge of mental incapacity or incompetency; but only attempted to introduce evidence in an effort to excuse the apparent failure of her relatives to show any previous attention to Miss Parks, which evidence, however, the circuit court excluded on the ground that it was not relevant to the question before the court, namely, her mental condition and her capacity to manage her affairs.

Nor does Article 18, Chapter 1 of Volume 1, Revised Statutes of Missouri, 1909 (1 Mo. St. Ann., p. 280), entitled "Guardians and Curators of Insane Persons," contain anything to authorize an ap-

peal from the order of the probate court appointing a guardian for an insane person *when the mental incompetency is not contested.* Section 453 of said article (1 Mo. St. Ann., p. 286), which says, nothing in the article or elsewhere shall be so construed as to prevent the appointment of a husband or wife, does not even attempt to give anyone a right of priority to be appointed guardian. Nor is such right of priority in the case of guardians given in any statute which we have found or of which we are aware.

Now, the appeal to the circuit court manifestly was not from the judgment finding Miss Parks to be of unsound mind and incapable of managing her affairs, since that was conceded as hereinbefore shown. The appeal is really from that part of the order which *names the guardian selected.* In other words, the so-called appellant is *not dissatisfied* with the finding as to insanity, but only with the *selection of the guardian* made by the probate court. But the only amendment as to appeals allowed is that of Section 282a, made March 29, 1921, Laws 1921, page 124, and it does *not* permit an appeal merely because of the *selection* made of the guardian appointed, but only from the finding as to *mental* condition. [See the same Section 285, R. S. Mo. 1929 (1 Mo. St. Ann., p. 181).]

The case of Baker v. Smith's Estate, 18 S. W. (2d) 147, is not an authority for an appeal on the question of whether the probate court has made the choice of the right person as guardian, since it was an appeal from the judgment on the question of the issue of insanity. Likewise, the appeal in Wells v. Tannary, 2 S. W. (2d) 189, was on the judgment as to the insanity charged. In the latter case, the probate court, without a jury, the finding was that the person was of unsound mind; in the circuit court on appeal, the jury found she was not of unsound mind. So the appeal in that case was on the precise and only subject in which Section 285 allows an appeal. In the case of Kane v. McMenamy, 270 S. W. 662, 669, the appeal was from a *final* order or judgment ousting a guardian and was, of course, held appealable, and involved entirely different questions from any presented in the case at bar. Appellant relies upon the fourth paragraph of Section 1938, Revised Statutes of Missouri, 1929, which is the same as Section 3956 of Revised Statutes of Missouri, 1909, and Section 2436 of Revised Statutes of Missouri 1919, which was discussed in the McMenamy case, supra, at the page last cited. With the right to appeal, with which, under the circumstances of that case and of the cases therein cited, we have no quarrel. But on the matter for which the appeal is really sought, namely, that some other person should have been selected as guardian, no evidence is offered against the *suitability* if Shortridge as guardian, and therefore, nothing is presented from which an appeal is authorized by any statute, whatever may be said to give

that right on other issues. The amendment of the statute, allowing an appeal on the question of mental condition (Session Acts, 1921, page 121), by not including the right to appeal on the question of who shall be selected as guardian, can only be construed as not allowing it solely on that feature. Appeals in court cases are regulated entirely by statute and the provisions regulating them are to be strictly construed. [State ex rel. v. Woodson, J., 128 Mo. 497.] Ordinarily where a judgment is not appealable, a stay or *supersedeas* is not enforcible even though an appeal is allowed, but when the right of appeal is the very question to be decided by the appeal, the allowance of an appeal may operate as a *supersedeas* until the appeal is disposed of. 3 C. J., section 1402, page 1279; and in such instances, and especially where the right of the person appointed to act is thus questioned, the *effect* is the same as if a *supersedeas* has been expressly granted. Consequently, the likelihood of loss occurring to an estate belonging to one who is concededly unable to care for himself, or the estate, because of an unsound mental condition, is all the more reason for not extending, by judicial construction, the right of appeal when the only question sought to be raised, relates perhaps to the one whom the court has selected as guardian. If the guardian selected should fail to obey the statute, such as to give no bond, or if the estate is not properly handled by him, or any neglect of duty appears by any act of either commission or omission, this is a matter calling for his removal. But that must be raised by a proceeding instituted for that purpose. It cannot be raised by an appeal "tacked on" to a judgment as to the mental condition of the one for whom a guardian is appointed, when not only the incompetent mental condition is conceded, but no charge is made as to the unsuitability of the guardian selected. An appeal from the order of a probate court refusing to remove a guardian of an unsound person may be taken by an aggrieved person if appellant be the right person. [State ex rel. v. Wurdeman, J., 286 Mo. 153.] The same case reasserts the well known rule that the right to appeal is a creature of statute and even those who are relatives of the insane person and, on his or her death, will *then* become her heirs, have during the life of such insane person, no such interest in her estate as would entitle them to an appeal in the case before us.

From what we have hereinbefore said, we are of the opinion that, under the circumstances of this case, the trial court correctly ruled on its motion to dismiss the appeal from the probate court and we should likewise dismiss the appeal here. It is so ordered.