652 S.W.2d 252 (1983)
In re ESTATE OF Yolanda Y. PATTERSON and Teneille Y. Patterson, Minors.
Maxine HAWTHORNE, Petitioner-Respondent,
v.
Harry W. PATTERSON, Respondent-Appellant.
No. 12562.
Missouri Court of Appeals, Southern District, Division Two.
May 10, 1983.
*253 William W. Hoertel, Ronald D. White, Rolla, for petitioner-respondent.
J. Kent Robinson, Rolla, for respondent-appellant.
PREWITT, Judge.
Respondent petitioned the Probate Division of the Phelps County Circuit Court to be appointed guardian of the persons and of the estates of Yolanda Y. Patterson, then aged 5 years, and Teneille Y. Patterson, then aged 2 years. Appellant contested the appointments. After a hearing the trial court appointed respondent guardian of the estate and person of both children.
Respondent is the grandmother of the children and has physical custody of them in Phelps County. Her daughter, Cora Ford, was their mother. Respondent has lived in Phelps County for at least twenty years. She was on vacation from her employment and was visiting Cora Ford and the children in Syracuse, New York on July 19, 1981, when Cora Ford was killed in an automobile accident. Cora Ford was not married at the time the children were conceived and born. Appellant contends that he is the father of the children.
Prior to their mother's death, the children had lived in Syracuse with her since their birth. Appellant did not live with them at the time of Cora Ford's death, but claims to have previously lived with Cora Ford and after their birth with the children. He resides in Syracuse. Respondent testified *254 that she talked to appellant during the week after Cora Ford's death and told him she intended to take the children to live with her and appellant replied that he "couldn't think of any better person that he would want them to be with." Appellant testified that respondent said she wanted to take the children home with her and he replied that she could "for now". A week after their mother was killed, respondent brought the children from Syracuse to Phelps County. From August until the month of the hearing, appellant sent respondent $100 a month for the support of the children.
Respondent's petition was filed slightly over three months after they came with her and they had lived with her over four months at the time of the hearing. The petition recites that one of the reasons for seeking the appointment is to enable the children to bring an action for the wrongful death of their mother.
Appellant asserts in his points relied on that the appointments were erroneous because under the Uniform Child Custody Jurisdiction Act, §§ 452.440-452.550, RSMo 1978 and RSMo Supp.1982, Missouri courts have no jurisdiction; that as appellant is the father of the children the court "was without authority to issue Letters of Guardianship of the person unless the Appellant was adjudged unsuitable or incompetent for the duties of guardianship." He also contends that he received insufficient notice of the guardianship hearing because under § 452.455.2, RSMo Supp.1982, he was entitled to 30 days to file an answer after receiving notice, and the hearing was held 23 days after he received notice. Each party's contentions are the same with respect to each child and neither party contends that the results as between the children should be different.
The parties have also treated the appointments as guardian of the persons and the appointments as guardian of the estates of the minors together and as not being subject to any different procedures or standards. However, we feel that at least in this situation, the appointments as guardian of the persons must be treated separately from the appointments as guardian of the estates.
The two offices are "distinct" and different persons may be appointed to each office. See Maus, Probate Law and Practice, § 1731, p. 133 (1960); § 475.090, RSMo 1978. It is apparent from chapter 475, RSMo 1978, "Probate CodeGuardianship", that while a guardian of the person and of the estate can be appointed at the same time and in the same proceeding, appointments of each can be made at different times and in different proceedings. The need for both a guardian of the estate and a guardian of the person may not exist at the same time. Although the procedure provided in chapter 475 for the appointment of both is essentially the same, it is necessary to consider them separately here because the Missouri version of the Uniform Child Custody Jurisdiction Act applies to "appointment of a guardian of the person". § 452.445(2), RSMo 1978.[1] It does not apply to the appointment of a guardian of the estate.
As a nonresident of Missouri, appellant was not eligible to be appointed by a Missouri court as either a guardian of the person or a guardian of the estate of either child. § 475.055.2, RSMo Supp.1982. The Uniform Child Custody Jurisdiction Act does not purport to cover eligibility to serve as guardian of the person.
We first consider whether respondent should have been appointed as guardian of the estates of the children. Section 475.035.1, RSMo 1978, provides for the appointment of a guardian in the county *255 where the minor is domiciled or if there is no domicile, then where the minor resides or can be found. If the children were not domiciled in Phelps County, see State ex rel. Brown v. Hamilton, 202 Mo. 377, 100 S.W. 609, 611 (1907); Leflar, American Conflicts Law, § 12, p. 20, § 245, p. 495 (1977), they were at least residing there and could be found there. Due to the manner of their mother's death, there was a basis for the trial court to find that appointment of a guardian of the estates of the minors was proper in order to prosecute the wrongful death action. See § 475.130.3, RSMo 1978.
Assuming that he was entitled to notice, the notice appellant received was sufficient in a proceeding for the appointment of a guardian of the estate. Section 475.070, RSMo 1978, provides that notice of guardianship proceedings be given a parent as provided in § 472.100, RSMo Supp.1982. Except for publication, no time for the notice is fixed, and whether the notice provides a reasonable time is to be determined under the particular circumstances. Maus, supra, § 1748, p. 152. No reason is advanced why 23 days notice was not reasonable notice for a hearing on the appointment of a guardian of the estates of the children.
Respondent was the only person who had applied to be appointed guardian and the evidence indicated she was qualified. There was no contention otherwise. Appellant's evidence was all concerned with "custody" of the children and none of it related to who should manage their estates. Even if we assume that appellant qualifies as a "parent", see § 475.045, RSMo 1978, which might have entitled him to be appointed had he been a resident of Missouri, his nonresidency precluded his appointment. Appointment of respondent as guardian of the estates of the minors was proper.
However, because the Uniform Child Custody Jurisdiction Act, at least as adopted in Missouri, applies to appointments for guardian of the person, it does not necessarily follow that because the appointment of respondent as the guardian of the estates of the minors was proper, that the trial court was correct in appointing respondent as guardian of their persons. Although in most respects we can give effect to both chapter 475 and that Act, where there is a conflict, we follow the later. When two acts apply to one subject, the rule is to give effect to both if possible, but if any of their provisions are repugnant the later act, even without any repealing clause, operates to the extent of the repugnancy to repeal the first. City of Kirkwood v. Allen, 399 S.W.2d 30, 34 (Mo. banc 1966).
We now discuss appellant's contention that he did not receive proper notice of the hearings as it pertains to the appointments of a guardian of the persons of the children. As earlier noted we determined that under chapter 475, RSMo 1978, the notice to appellant was sufficient. However, as the Uniform Child Custody Jurisdiction Act applies to appointments of guardians of the person and as § 452.455.2, RSMo Supp.1982, provides for notice to parents and thirty days in which a parent may file an answer, and appellant did not receive that much notice, a different issue is presented. That issue is whether appellant is a "parent" under that Act and is entitled to notice and thirty days to answer.
In her petition respondent alleged that the father of the children "is unknown although one Harry Patterson appears on each of the children's birth certificates as father." Following the filing of the petition, the regular judge of the probate division[2] set a hearing 28 days later and ordered that appellant receive notice of the hearing. He was served 23 days before the hearing. By written motion appellant sought unsuccessfully to delay the hearing. He did not file an answer.
Section 452.455.2, RSMo Supp.1982, provides that "any parent whose parental rights have not been previously terminated... must be served ... and may within thirty days after the date of service ... file *256 a verified answer." Although subsection 1 of that section appears to apply only to modifications of previous custody decrees, subsection 2 would apply to this proceeding.[3] Absent such notice, if required upon appellant, the court could not appoint a guardian of the person. See Giles v. Anderst, 305 N.W.2d 381, 383 (S.D.1981).
Respondent contends that until appellant is "judicially determined to be the natural father of the children" he has no greater right than any other person and was not entitled to be treated as a party to these proceedings.
"Parent" as literally interpreted, refers to a natural father or mother, but in law is often limited to only designate a legitimate relationship between a mother, father, and their issue. See 67A C.J.S., p. 160-161. In State ex rel. Canfield v. Porterfield, 222 Mo.App. 553, 292 S.W. 85, 86-87 (1927) "parent" in a Missouri statute was held to only refer to a parent of a legitimate child.
In England it has been held that "parent" in an act of Parliament requiring a parent's consent to adoption does not include the father of an illegitimate child. "The reason is that the law of England has from time immemorial looked upon ... [an illegitimate child] ... as the child of no known body except its mother. The father is too uncertain a figure for the law to take any cognizance of him except that it will make him pay for the child's maintenance if it can find out who he is." Denning, Ld.J., Re M., [1955] 2 Q.B. 479 [1955] 3 Week LR 320, 51 A.L.R.2d 488, 490.
However, the trend of recent legislation and court decisions has been toward a more liberal use of the term where illegitimacy is involved and "parent" is often applied in speaking of those who beget an illegitimate child. 67A C.J.S., p. 161. See also 59 Am. Jur.2d, Parent and Child, § 2, p. 84; 31 Words and Phrases, "Parent", p. 107. We believe that trend should be followed and appellant's rights to the children should not be foreclosed solely because he was not married to their mother.
Respondent consulted with appellant before bringing the children to Missouri and has received money from him for their support. He is shown as their father on each child's birth certificate. One of respondent's witnesses, Cora Ford's cousin, who respondent employs as a baby sitter for the children while she works, testified that Cora Ford told her that appellant was the father of the children. He had been treated as their father and assumed, in part, responsibility for their support.
Whether the father of an illegitimate child is always entitled to a notice under § 452.455.2, we do not decide. We do determine that because appellant has been treated as their father by their mother and by respondent and has acknowledged the children as his and has contributed to their support, he is entitled to notice. See State ex rel. J.D.S. v. Edwards, 574 S.W.2d 405 (Mo. banc 1978); J.B.B. v. Baby Girl S, 611 S.W.2d 359 (Mo.App.1980); State ex rel. T.A.B. v. Corrigan, 600 S.W.2d 87 (Mo.App. 1980). See also Annot., Necessity of securing consent of parents of illegitimate child to its adoption. 51 A.L.R.2d 497 (1957). Appellant was entitled to at least 30 days notice before the hearing on whether respondent should be appointed guardian of the persons of the children.
*257 We also discuss appellant's contention that Missouri courts lack jurisdiction because of the Uniform Child Custody Jurisdiction Act as if he is correct then a reversal rather than a remand of the proceeding for the appointment of a guardian of the persons would be necessary. Section 452. 450, RSMo 1978,[4] of that Act provides when the courts of this state have jurisdiction to make a custody determination. The children had not lived in Missouri long enough for this to be their "home state". See § 452.445(4), RSMo 1978. Respondent contends that Missouri had jurisdiction under § 452.450.1(2) and (3)(a). Whether the children were "abandoned", and thus § 452. 450.1(3)(a) might apply, we do not decide, as we determine that we cannot say as a matter of law that the trial court does not have jurisdiction under § 452.450.1(2).
It may be in the best interest of the children that Missouri courts assume jurisdiction because the children and respondent have a significant connection with this state. Respondent has lived here over twenty years. The children live here and one of them is going to school here. There was available in Phelps County substantial evidence concerning the children's present care, protection, training and personal relationships. Compare Green v. Green, 87 Mich.App. 706, 276 N.W.2d 472, 474 (1978); Nelson v. District Court, 186 Colo. 381, 527 P.2d 811, 813-814 (1974).
It appears to us on this record that there may be a sufficient basis for the trial court to find that it has jurisdiction to appoint a guardian of the person of each child. However, as appellant did not receive the notice required before the appointment of a guardian of the person, he should be given an opportunity to litigate all issues pertaining to that appointment, so we do not at this time make a final determination that the trial court had jurisdiction to make that appointment. We do rule that there was jurisdiction to appoint a guardian of the estates of each child and that respondent was properly appointed to that capacity.
The portion of the order appointing respondent guardian of the estates of each child is affirmed and that part of the order appointing respondent guardian of the persons of each child is reversed and the cause remanded to the trial court for further proceedings to determine if respondent should be appointed guardian of the persons of the children. Appellant is to have thirty days after the issuance of this court's mandate to file an answer, and the trial court is to thereafter hold a hearing on respondent's *258 request that she be appointed guardian of the persons of said children.
MAUS, P.J., and HOGAN, J., concur.
NOTES
[1] The Act has been held to apply to guardianship proceeding which involve "custody" even where guardianship proceedings have not been specifically included in the Act. See In re Guardianship of Wonderly, 67 Ohio St.2d 178, 423 N.E.2d 420, 424 (1981).

For a discussion of the Uniform Child Custody Jurisdiction Act generally, see Krauskopf, Child Custody Jurisdiction Under the UCCJA, 34 J.Mo.Bar 383 (1978).
[2] That judge was disqualified before the hearing commenced. By local court rule the matter was assigned to Judge Turley and the hearing was held on the day scheduled.
[3] Section 452.455, RSMo Supp.1982 states:

Petition for modificationprocedure.
1. Any petition for modification of child custody decrees filed under the provisions of section 452.410, or sections 452.440 to 452.450, shall be verified and, if the original proceeding originated in the state of Missouri, shall be filed in that original case, but service shall be obtained and responsive pleadings may be filed as in any original proceeding.
2. Before making a decree under the provisions of section 452.410, or sections 452.440 to 452.450, the litigants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child must be served in the manner provided by the rules of civil procedure and applicable court rules and may within thirty days after the date of service (forty-five days if service by publication) file a verified answer. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to section 452.460.
[4] Section 452.450, RSMo. 1978 states:

Jurisdiction
1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state:
(a) Is the home state of the child at the time of commencement of the proceeding; or
(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because:
(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and
(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and:
(a) The child has been abandoned; or
(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or
(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.
3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.