In the ESTATE of Robert A. SEABAUGH, Deceased,

Jacqueline Kay Seabaugh ARSENEAU, Appellant,

v.

Winford C. BROWN, Personal Representative, and Ethel Taylor, Respondents.

No. 12669.

Missouri Court of Appeals, Southern District, Division Three.

July 8, 1983.

H. Morley Swingle, Spradling & Spradling, Cape Girardeau, for appellant.

Donald Rhodes, Bloomfield, for respondent Brown. Gary A. Kamp, Marble Hill, for respondent Taylor.

CROW, Presiding Judge.

This is an appeal from an order of the Probate Division of the Circuit Court of Bollinger County ("the probate division") denying an application for letters of administration by a putative daughter of a decedent, denying a like application by a sister of the decedent, and directing that letters be issued to the public administrator.

Robert A. Seabaugh ("Robert") died December 30, 1981, at age 65. On January 20, 1982, Ethel Taylor ("Ethel") filed a petition in the probate division to require administration of Robert's estate. § 473.020, RSMo 1978, as amended by Laws 1980, p. 455. Ethel's petition alleges Robert died intestate and that she, being his sister, is entitled to administer, as are two other sisters and a brother, the four being Robert's "lawful heirs at law." § 473.110.2, RSMo 1978, as amended by Laws 1980, p. 459.

On January 28, 1982, appellant ("Jacqueline") filed an application for letters of administration in the probate division, alleging she is Robert's daughter, and listing no other heirs. In a brief accompanying her application, Jacqueline states her mother ("Maxine") married Robert September 30, 1943, that Jacqueline was born June 24, 1945, and that Maxine and Robert were divorced October 24, 1947. Jacqueline supplied the probate division a copy of her "birth certificate" and copies of certain documents from the court records of the divorce case, including the decree as shown in a judgment book. Jacqueline asserts her status as Robert's daughter is res judicata by reason of the divorce decree, and that Robert's siblings are collaterally estopped from claiming Jacqueline is not Robert's child.

On February 16, 1982, Ethel filed a brief in the probate division, denying that Jacqueline is Robert's child and asserting that Jacqueline was not adjudicated to be so in the divorce case.

On March 3, 1982, the judge of the probate division entered an "Order Directing Issuance of Letters." The order states "that there has been no evidentiary hearing and no determination of heirship proceeding nor other litigation in which an adjudication has been made as to who the heirs of Robert A. Seabaugh are and, hence, who is entitled to the issuance of Letters of Administration." The order continues, "The Court, in entering this order, makes no finding, determination or adjudication as to the heirship of Robert A. Seabaugh, deceased." The order further provides, "The Court does hereby find, order and adjudge that the divorce proceeding ... and the judgment entered therein, does not make res judicata the issue of the parenty [sic] of Jacqueline K. Seabaugh Arseneau; and the Court finds that the issue of whether or not Jacqueline K. Arseneau was the daughter of Robert A. Seabaugh was not adjudicated in the aforementioned case ...." The order declares that by reason thereof, Robert's "heirs" are not collaterally estopped from challenging the allegation that Jacqueline is Robert's child. The order contains a finding that except for Ethel, Robert's siblings have not applied for letters of administration, and an additional finding that Jacqueline is not acquainted with the estate or any of Robert's assets "inasmuch as she did not associate with him prior to his death and is a nonresident of this state." [1]

Having set out these findings and others, the order declares that neither Jacqueline

1. Jacqueline's application for letters shows her address as Rural Route 2, Kankakee, Illinois.

nor Ethel is competent and suitable to serve as personal representative, and that letters of administration shall issue to the public administrator of Bollinger County ("Brown") upon his application.

On March 5, 1982, Brown made application, and letters were issued to him the same day.[2]

Jacqueline's notice of appeal states she appeals from the Order Directing Issuance of Letters "in which the Court finds, orders, and adjudges that the heirs of Robert A. Seabaugh are not collaterally estopped from challenging the allegation that Jacqueline Kay Seabaugh Arseneau is the child of Robert A. Seabaugh, entered in this action on the 3rd day of March, 1982."

Ethel did not appeal.

Brown filed a motion in this Court to dismiss the appeal, the basis of the motion, as we understand it, being that the order of March 3, 1982, is not final for purpose of appeal because it does not dispose of all issues between all parties. Specifically, Brown's motion states that the probate division determined it did not have jurisdiction to determine whether Jacqueline is Robert's daughter.[3] Brown's motion adds

that until "a proper action is filed by an interested party" and a final judgment is entered on the paternity issue, there is no appealable order.

Brown's motion was taken with the case.

■ We hold the probate division's order is not appealable, but for different reasons than those asserted by Brown.

Historically, Missouri has allowed no appeal from an order granting, or denying, an application for letters of administration. Maus, *Probate Law and Practice* (3 Mo. Prac.Series) § 565 (1960). The rule originated in *State ex rel. Grover v. Fowler,* 108 Mo. 465, 18 S.W. 968 (banc 1891). There, a daughter and a son applied separately for letters of administration on the estate of their deceased mother. The probate court[4] heard both applications simultaneously, denied the daughter's application, and issued letters to the son. The daughter appealed[5] and also commenced an original proceeding in prohibition in the Supreme Court to prevent her brother from acting as administrator and to prevent the probate judge from recognizing him. Then (as now) there was a statute listing the types of probate court orders from which an appeal was allowed.[6]

In compliance with § 473.117.3, RSMo 1978, as amended by Laws 1981, p. 620, Jacqueline attached to her application a designation of a Missouri resident as agent for service of process and receipt of notice.

**2.** An inventory and appraisement of Robert's estate, filed by Brown, lists real estate of the aggregate value of $43,000 and personal property of the aggregate value of $2,175.

**3.** We find no mention of lack of jurisdiction in the probate division's order.

**4.** Until January 2, 1979, there was a probate court in each county. Probate courts were abolished by the amendments to article V of the Constitution of Missouri adopted by election August 3, 1976, effective January 2, 1979. Since the latter date, the probate division of the circuit court has had original jurisdiction of matters formerly within the original jurisdiction of the probate court. § 472.020, RSMo 1978, effective January 2, 1979.

**5.** At that time, appeals from a probate court were taken to the circuit court, and the latter became possessed of the cause, to hear, try and determine it anew, without regard to any error, defect or other imperfection in the proceedings

of the probate court. § 292, RSMo 1889, carried forward, as amended, as § 472.250, RSMo 1969. This procedure prevailed until January 2, 1979, when probate courts were abolished (footnote 4, supra). Since January 2, 1979, appeals from the probate division of the circuit court have been taken to the appropriate appellate court. § 472.160.1, RSMo 1978, effective January 2, 1979.

**6.** § 285, RSMo 1889, provided:

"Appeals shall be allowed from the decision of the probate court to the circuit court, in the following cases: First, on all demands against an estate exceeding ten dollars; second, on all settlements of executors and administrators; third, on all apportionments among creditors, legatees or distributees; fourth, on all orders directing the payment of legacies, making distribution or making allowances to the widow; fifth, on all orders for the sale of personal estate because distribution cannot be made in kind; sixth, on all orders for the sale of real estate; seventh, on judgments for waste; eighth, on proceedings to recover balances escheated to the state; ninth, on all orders revoking letters testamentary or of administration; tenth, on or-

One type was "all orders revoking letters testamentary or of administration." Orders granting or denying letters of administration were not listed. Following the list (14 in all) was a provision allowing an appeal "in all other cases where there shall be a final decision of any matter arising under the provisions of this chapter." The Supreme Court stated that if appeal lay from an order appointing an administrator, it must be by force of this latter provision. Observing that the legislature provided specifically for an appeal from an order revoking letters, but made no mention of an appeal from an order appointing an administrator, the Supreme Court held this raised a strong inference that it was not the intention to allow an appeal in the latter case. The Supreme Court held that where there are competing applications by persons equally entitled to administer, the decision as to whom to appoint is left to the judgment and discretion of the probate court, not reviewable by appeal. If one applicant has statutory priority over others, the probate court is required to follow the statute, and if the probate court disregards the priority, the aggrieved applicant can enforce his priority by mandamus. The Supreme Court also noted the absence of a statute authorizing appointment of an administrator pending an appeal in a contest over whom should be appointed, and recognized that holding administration in abeyance during an appeal would be disastrous to many estates. Finding no authority for the appeal, the Supreme Court denied the writ.

After *Grover,* the task of identifying appealable and non-appealable probate court orders proved troublesome, and the holdings were not always consistent or easily reconciled.

In *State ex rel. Adamson v. Collier,* 62 Mo.App. 38 (1895), three persons were appointed administrators of a decedent's estate. Thereafter, a woman claiming to be the decedent's widow applied for letters of administration, but the probate court took no action on her application. A few weeks later she filed a petition for removal of the administrators, coupled with a request that she be appointed. The probate court, after a hearing, denied the petition and the woman filed an affidavit and bond for appeal to the circuit court. The probate court denied the appeal, and the woman obtained an alternative writ of mandamus from the circuit court. After hearing, the circuit court denied a peremptory writ, and the woman appealed. The St. Louis Court of Appeals reversed and remanded with directions to award a peremptory writ compelling the probate court to allow the appeal.

In *Burge v. Burge,* 94 Mo.App. 15, 67 S.W. 703 (1902), one of two executors named in the decedent's will died and the other resigned. Letters of administration with will annexed were issued to a son of the decedent. Later, a woman claiming to be the decedent's widow applied for letters, asserting priority to administer. The probate court revoked the son's letters and issued letters to the woman. The son appealed to the circuit court, and that court, deciding the issue anew,[7] denied the woman's application. She appealed to the Kansas City Court of Appeals. That court, citing *Adamson,* held that where one claims the statutory right to administer, and the probate court denies the claim, the claimant may appeal. The Court of Appeals said *Grover* held only that an appeal did not lie from an order appointing an administrator, a different order than the one in *Burge.* The Court of Appeals considered the appeal on its merits, and affirmed the circuit court.

*Grover* was held controlling in *Looney v. Browning,* 112 Mo.App. 195, 86 S.W. 564

ders making allowances for the expenses of administration; eleventh, on orders for the specific execution of contracts; twelfth, on orders compelling legatees and distributees to refund; thirteenth, on the refusal of the court to order sale of real estate to pay debts or legacies; fourteenth, on refusal of the court to order distribution or apportionment among creditors; fifteenth, and in all other cases where there shall be a final decision of

any matter arising under the provisions of this chapter. And the right of appeal herein provided for shall extend to any heir, devisee, legatee, creditor or other person having an interest in the estate under administration." The present statute is § 472.160.1, RSMo 1978, as amended by Laws 1980, p. 452. It appears in footnote 17, infra.

7. Footnote 5, supra.

(1905). There, two competing applications were made for appointment as curator of the estate of a minor child. The unsuccessful applicant appealed from the probate court order appointing his rival. The circuit court dismissed the appeal, and the St. Louis Court of Appeals affirmed on the basis that the statute pertaining to curators allowed appeals from any final order or judgment of the probate court with the same effect and in the same manner as appeals were allowed in cases of administration of decedents' estates. Noting that *Grover* held no appeal lay from an order appointing an administrator, and observing that there was no statute authorizing the appointment of a curator pending appeal, the Court of Appeals held the order non-appealable.

In *State ex rel. Pinger v. Reynolds,* 121 Mo.App. 699, 97 S.W. 650 (1906), the Kansas City Court of Appeals held mandamus lay in the circuit court to compel the probate court to allow an appeal from its order denying an application by two minor children to (a) remove the public administrator as curator of their estates, and (b) appoint an individual chosen by them (they being over age 14 and entitled to make such choice). The public administrator had been appointed simultaneously with the probate court's rejection of the children's choice. The Court of Appeals, relying on *Burge,* held the probate court order appealable, characterizing it as an adverse order made on a claim of right, appealable under a clause allowing appeal from "any final order or judgment of the probate court" in like manner and with the same effect as appeals were allowed in cases of administration of decedents' estates. The Court of Appeals declared its holding was in harmony with *Grover.*

In *Flick v. Schenk,* 212 Mo. 275, 110 S.W. 1074 (1908), a widow began administration of her deceased husband's estate, but died, and a son applied for appointment as ad-

ministrator de bonus non. Three other heirs objected, and the probate court appointed the public administrator. The son appealed to the circuit court, which affirmed the probate court. The son then appealed to the St. Louis Court of Appeals, which dismissed the appeal on the authority of *Grover,* but deemed its holding to be in conflict with that of the Kansas City Court of Appeals in *Burge,* and certified the cause to the Supreme Court.[8] The son attempted to distinguish *Grover* on the ground that the appeal there was from an order appointing an administrator, whereas his appeal was from an order refusing to appoint him administrator. The Supreme Court held the distinction too attenuated to be of practical application. The Supreme Court affirmed the St. Louis Court of Appeals' dismissal of the appeal, observing that *Grover* was decided in 1891 and the legislature had not since changed the statute.[9] The Supreme Court found no conflict between *Grover* and *Burge,* noting that in *Burge* the appeal was from the order revoking the letters issued to the son, and that § 278, RSMo 1899, expressly allowed an appeal from "all orders revoking letters testamentary or of administration." This appears to be a firmer basis for the holding in *Burge* than that given by the Court of Appeals in the *Burge* opinion. The Supreme Court declared that the language in *Burge* indicating that where the right to administer is denied by the probate court, the claimant may appeal (for which *Burge* had cited *Adamson* as authority) found no support in *Grover.* 110 S.W. at 1075.

In re *Brinckwirth's Estate,* 268 Mo. 86, 186 S.W. 1048 (1916), involved an application to remove the public administrator as curator of the estates of three minors. The application was made by two uncles, who sought appointment as guardians of the persons of the minors and curators of their estates. The probate court denied the application and the uncles appealed to the circuit court, which affirmed the probate

8. *Flick v. Schenk,* 136 Mo.App. 164, 117 S.W. 93 (1905).

9. § 285, RSMo 1889 (footnote 6, supra), on which *Grover* was based, was carried forward

in RSMo 1899 as § 278. *Flick,* 110 S.W. at 1075; Appendix, Former Probate Laws, Vol. 26A, V.A.M.S. (1956), p. 413, § 467.010.

court. The uncles appealed to the Supreme Court. The public administrator argued the order was non-appealable, citing *Grover.* The Supreme Court disagreed, pointing out that the statute on which *Grover* was based was carried forward as § 289, RSMo 1909, and provided that appeals from the probate court could be taken "in all other cases where there shall be a decision of any matter arising under the provisions of articles 1 to 13." 186 S.W. at 1050. Those articles did not include the article relating to guardians and curators of minors, which was article 17. The statute concerning appeals under article 17 allowed an appeal "from any final order or judgment of the probate court under this article," in like manner and with the same effect as appeals were allowed in cases of administration of decedents' estates. The Supreme Court held that the reference to cases of decedents' estates prescribed only the "practice and effect" of the appeal, and not the class of orders from which appeal was allowed. Holding the order a final order, the Supreme Court considered the appeal on its merits and reversed the circuit court. The Supreme Court stated it still adhered to *Grover* and *Flick,* but those cases did not apply. The Supreme Court did not mention *Looney,* but cited *Pinger* with approval.

In *Ex parte Smith,* 197 Mo.App. 200, 193 S.W. 288 (1917), the St. Louis Court of Appeals, citing *Brinckwirth's Estate,* overruled its holding in *Looney.* In *Smith,* the

mother of a young child died and the child's maternal grandmother applied for appointment as guardian. The probate court found the child's father unfit, and appointed the grandmother. The father appealed. The Court of Appeals held the order appealable, and, in addition, that inasmuch as the father had posted an appeal bond, the force and effect of the order was suspended, leaving the cause pending for trial de novo in circuit court.

After *Brinckwirth's Estate* and *Smith,* we find no Missouri case holding that an order granting or denying an application for appointment as guardian of the person of a minor, or curator of his estate, is not appealable.[10] Indeed, *State ex rel. Pope v. Lisle,* 469 S.W.2d 841 (Mo.App.1971), went a step beyond *Brinckwirth's Estate* and *Smith.* In *Pope,* the probate court denied a mother's application to be appointed guardian of her minor daughter's estate, finding the mother unfit. The probate court appointed the public administrator, and the mother petitioned the circuit court for a writ of mandamus to direct the probate court to set aside the appointment of the public administrator and to appoint her. The circuit court issued an alternative writ, but ultimately dismissed it with prejudice, and the mother appealed. The Court of Appeals, citing *Smith,* affirmed the circuit court, holding that the remedy of appeal was available under §§ 472.160.1(15),[11] 472.-200 [12] and 478.070(4),[13] RSMo 1969, therefore mandamus did not lie.

**10.** There is, however, a holding that no appeal lies from a probate court order adjudicating an elderly lady incompetent and appointing a guardian of her person and estate. *In re Shortridge,* 229 Mo.App. 1011, 84 S.W.2d 983 (1935). The appeal was by a nephew, the finding of incompetency was unchallenged, and the only reason for the appeal was the nephew's dissatisfaction with the guardian.

**11.** § 472.160.1, RSMo 1969, provided, in pertinent part: "Any interested person aggrieved thereby may appeal from the order, judgment or decree of the probate court or of the judge thereof in the following cases:

. . . .

(15) In all other cases where there is a final order or judgment of the probate court under this code except orders admitting to or rejecting wills from probate."

**12.** § 472.200, RSMo 1969, provided, in pertinent part: "Appeals from orders, judgments or decrees of the probate court shall be taken to the circuit court . . . ."

**13.** § 478.070, RSMo 1969, provided, in pertinent part: "The circuit courts in the respective counties in which they may be held shall have power and jurisdiction as follows:

. . . .

(4) Appellate jurisdiction from the judgment and orders of county courts, probate courts and magistrates, in all cases not expressly prohibited by law, and shall possess a superintending control over them, and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind."

In three more recent cases, appealability of an order appointing a guardian was not even questioned. *Roots v. Reid,* 555 S.W.2d 54 (Mo.App.1977); *Matter of Tepen,* 599 S.W.2d 533 (Mo.App.1980); *Hawthorne v. Patterson,* 652 S.W.2d 252 (Mo.App.1983). *Roots* was an appeal by a nephew from a probate court order denying his application to be appointed guardian of the person and estate of his incompetent aunt and appointing the public administrator. *Tepen* was an appeal by a wife from an order of the probate division of the circuit court denying her application for appointment as guardian of the person and estate of her incompetent husband and appointing another. *Hawthorne* was an appeal by the father of two minor children from an order of the probate division of the circuit court appointing the children's maternal grandmother guardian of their persons and estates.

There has thus been a general retreat from *Grover,* and its offspring *Looney,* so far as appeals from orders granting or denying applications for letters of guardianship are concerned. No such departure has occurred, however, regarding orders granting or denying applications for letters of administration in decedents' estates.

In *Marshall v. Shoemaker's Estate,* 164 Mo.App. 429, 144 S.W. 1120 (1912), the St. Louis Court of Appeals, citing *Grover* and *Flick,* held that an administrator appointed by the probate court in vacation could not appeal from the same court's order at the ensuing term rejecting his appointment and appointing the public administrator. The appointment in vacation was only temporary, subject to confirmation or rejection at the next term, and when rejected, the right to administer ceased.

In *Lucitt v. Toohey's Estate,* 338 Mo. 343, 89 S.W.2d 662 (1935), the Supreme Court, citing *Grover,* held no appeal lay from a probate court order appointing the public administrator as administrator of a decedent's estate. 89 S.W.2d at 664[4].

In *Stobie v. Stobie,* 183 S.W.2d 609 (Mo. App.1944), the decedent's brother sought letters testamentary as successor executor. The probate court denied the application and appointed the public administrator.

The brother appealed to the circuit court, which reached the same result. The Court of Appeals, citing *Flick* and *Lucitt,* held the order of the probate court denying the brother's petition non-appealable, thus the circuit court acquired no jurisdiction. The judgment of the circuit court was reversed and remanded with directions to dismiss the brother's appeal. *Stobie* appears to be the most recent case in point.

If *Grover, Flick, Marshall, Lucitt* and *Stobie* compel dismissal of Jacqueline's appeal, one may ask what remedy, if any, an aggrieved party has in a case like this. The answer, according to *Grover,* is mandamus, but cases since *Grover* in which aggrieved parties have resorted to mandamus have reached diverse results.

In *State ex rel. Abercrombie v. Holtcamp,* 267 Mo. 412, 185 S.W. 201 (1916), the decedent, domiciled in Ohio, left a will naming the relator as executor. Relator resigned as executor in Ohio, then later, after ancillary administration had begun in Missouri, sought letters in Missouri. The probate court found that relator had no absolute right to qualify because of his earlier renunciation. The probate court appointed another as administrator with will annexed. Relator sought mandamus in the circuit court to compel the probate court to permit him to qualify as executor, and to revoke the appointment of the administrator w.w.a. The circuit court granted a peremptory writ. On appeal, the Supreme Court held that the probate court was required to determine the legal effect of the resignation in Ohio, and whether this constituted a resignation in Missouri, a decision that required the exercise of judicial discretion. Holding that the exercise of discretion cannot be controlled by mandamus, the Supreme Court reversed the circuit court and directed that the writ be quashed. The Supreme Court said that had there been nothing to preclude relator from asserting his original right to letters, mandamus would have been the proper remedy.

A similar result was reached in *State ex rel. Thompson v. Nortoni,* 269 Mo. 563, 191 S.W. 429 (banc 1916). There, a widow ap-

plied for letters of administration on the estate of her deceased husband. He and she had signed an antenuptial agreement in which she agreed to accept a stipulated annual sum in lieu of all marital rights and relinquished all interest in her husband's estate. The probate court found this constituted a waiver of the right to administer, denied the widow's application and appointed the public administrator. The widow sought mandamus in the St. Louis Court of Appeals. That Court granted the writ and directed the probate court to vacate the order appointing the public administrator, and to appoint the widow as administratrix. The Supreme Court granted certiorari. Distinguishing *Grover* from *Abercrombie,* the Supreme Court held it was for the probate court to determine the question of waiver, and not for the Court of Appeals to determine that question in a mandamus proceeding. Noting that some other probate judge might have rendered a different judgment, the Supreme Court held mandamus does not lie if a question arises which requires judicial determination. The Supreme Court said, "It may be unfortunate that the statute provides for no appeal from the probate court in such cases, but the remedy is with the lawmakers, and not with the courts." 191 S.W. at 432.

An applicant for letters of administration de bonis non successfully used mandamus in *State ex rel. Riesmeyer v. Holtcamp,* 273 Mo. 124, 200 S.W. 294 (banc 1917). There, the decedent's next of kin were a brother, a sister, and several nieces and nephews. The sister waived her right to letters of administration, asking that letters be issued to the brother. He was appointed, but died before completing administration, and the public administrator took charge of the estate. The sister thereupon filed an application for letters of administration de bonis non, together with a motion to remove the public administrator. The probate court denied relief and the sister sought mandamus in the Supreme Court. Holding that the power of a supervising court to compel a probate judge to appoint an administrator in accordance with statutory priority is "too well settled for controversy," the Supreme Court made peremptory its writ ordering

the probate judge to issue letters to the sister. The Supreme Court held her waiver affected only her original right to be appointed administratrix, and not her right to be appointed administratrix de bonis non after the first administrator's death. The probate court was therefore not required to pass upon any waiver or renunciation, and no question of judicial discretion was presented.

In *State ex rel. Wilson v. Martin,* 223 Mo.App. 1176, 26 S.W.2d 834 (1930), a brother of the decedent sought mandamus to compel the probate court to appoint him administrator. The St. Louis Court of Appeals acknowledged that mandamus lay to compel the probate court to perform a ministerial duty, citing *Grover* and *Flick,* but held mandamus did not lie when the action of the probate court required the exercise of judicial discretion, citing *Thompson.* Noting that the brother had been found unfit by the probate court, and finding nothing to indicate that the probate court's discretion was exercised arbitrarily, the Court of Appeals affirmed the circuit court's denial of relief.

In *State ex rel. Fansher v. Guinotte,* 227 Mo.App. 902, 58 S.W.2d 1005 (1933), mandamus was held the proper remedy for the decedent's granddaughter who sought appointment as administratrix with will annexed. The probate court appointed the granddaughter co-administrator with a non-relative. The Court of Appeals held the granddaughter was entitled to priority, and to be appointed alone, unless the probate court found she was not competent and suitable. Having appointed her co-administrator, the probate court was deemed to have found her suitable, and was without authority to appoint a co-administrator. A peremptory writ was issued. The Court of Appeals rejected the argument that the granddaughter's proper remedy was appeal. 58 S.W.2d at 1009.

Mandamus has continued to be the remedy employed by those who were successful in obtaining relief from adverse rulings by probate courts on applications for letters in decedents' estates. *State ex rel. Gregory v. Henderson,* 230 Mo.App. 1, 88 S.W.2d 893

(1935); *State ex rel. Couch v. Kelso,* 217 S.W.2d 596 (Mo.App.1949); *State ex rel. North St. Louis Trust Co. v. Stahlhuth,* 362 Mo. 67, 239 S.W.2d 515 (banc 1951). In *Couch,* the probate court, after a hearing, denied an application for letters of administration by the decedent's first cousin, finding him incompetent and unsuitable, and appointed the public administrator. The cousin obtained a writ of mandamus from the circuit court ordering the probate court to cancel the public administrator's appointment and to appoint the cousin. On appeal of the mandamus judgment, the Court of Appeals observed that no appeal lay from the action of the probate court in refusing to appoint the cousin, and that mandamus is a proper remedy to compel the probate court to appoint a person as administrator where the facts undoubtedly show his right to appointment. 217 S.W.2d at 599. The Court of Appeals noted the cousin was entitled to appointment if competent and suitable, and that the probate court's finding against the cousin on that issue was not only without any evidence whatever to support it, but was contrary to all the evidence on the issue. The Court of Appeals held the probate court's refusal to appoint the cousin was an arbitrary exercise of power and an abuse of discretion. *Id.* 217 S.W.2d at 601. The Court of Appeals rejected the argument that mandamus does not lie to regulate the probate court in the exercise of judicial discretion, evidently on the basis

that mandamus lies if discretion is abused. The circuit court's judgment was affirmed.

The most recent mandamus case appears to be *State ex rel. Lillard v. Tompkins,* 262 S.W.2d 316 (Mo.App.1953). There, a decedent's half niece petitioned the circuit court to compel the probate court to revoke the appointment of a first cousin of the decedent as administrator, and to appoint the half niece. The circuit court denied relief. While the cause was under submission to the Court of Appeals, the first cousin made final settlement and resigned as administrator, thus rendering that aspect of the cause moot. The Court of Appeals noted that inasmuch as there was no present administrator, and the half niece was the sole resident distributee, she was entitled to be appointed unless found by the probate court to be incompetent and unsuitable. That issue was not before the probate court in the earlier proceedings, and thus not before the circuit court or the Court of Appeals. The judgment of the circuit court was affirmed.

It thus appears that since *Grover,* no one has successfully appealed in Missouri from a probate court order granting or denying letters of administration in a decedent's estate,[14] and that everyone who has obtained relief from such an order has utilized mandamus. With the case law in this posture, the only remaining question is whether the changes that occurred January 2, 1979, stripped the pertinent cases of their prece-

14. An order setting aside an earlier order which (a) awarded a widower exempt property, a maintenance allowance and a homestead allowance out of the property of his deceased wife, (b) granted his request for a refusal of letters of administration on her estate under § 473.090, RSMo 1969, and (c) denied an application for letters of administration by two of her sisters, was held appealable as a "special order after final judgment" under § 512.020, RSMo 1969. *In re Estate of Sympson,* 577 S.W.2d 68 (Mo.App.1978). The order setting aside the earlier order, and the earlier order itself, were entered by the circuit court, the cause having been transferred there after one of the parties filed a successful motion to disqualify the probate judge. In another case, *In re Estate of O'Neal,* 468 S.W.2d 671 (Mo.App.1971), the decedent's will named his daughter executrix. After the will was admitted to probate, several months passed with nothing being done. Eventually, a son applied for appointment as administrator c.t.a. Weeks later, the named executrix applied for letters. The probate court, after hearing, found the named executrix disqualified, and appointed the son. The named executrix moved for rehearing, and to revoke the son's appointment. Her motions were denied and she appealed to circuit court, which affirmed the probate court. In the Court of Appeals, her only point concerned the timeliness of the probate court hearing. She did not challenge the finding that she was disqualified. The son raised no issue of appealability of the probate court order. The Court of Appeals found it unnecessary to decide the point raised by the named executrix, noting that her disqualification made it mandatory for the probate court to issue letters to some qualified person, and that the son's qualifications had not been attacked. The judgment was affirmed.

dential value. On that date probate courts ceased to exist, and matters over which they had exercised original jurisdiction were placed under the original jurisdiction of the probate division of the circuit court.[15] Appeals in such matters, which until then had been taken from the probate court to the circuit court, have, since that date, been taken directly to the appropriate appellate court.[16]

■ The right of appeal is statutory. Without underlying statutory authority there is no right to an appeal. *United Labor Committee, Inc. v. Ashcroft,* 572 S.W.2d 446, 447[1] (Mo.banc 1978). The statute pertinent to Jacqueline's appeal is § 472.160, RSMo 1978, as amended by Laws 1980, p. 452.[17] This statute is remarkably similar to the statute under which *Grover* was decided,[18] and, like the statute in *Grover,* contains no provision authorizing an appeal from an order granting or denying letters testamentary or of administration in a decedent's estate. The two statutes differ in certain respects, but none of the differences affects the appealability of an order like the one here. The only provision that could arguably permit Jacqueline's appeal—paragraph 14 of § 472.160.1—is virtually identical with the statutory provision in *Grover* that was held not to authorize an appeal there.

■ We are bound to follow the last controlling opinion of the Supreme Court of Missouri. Mo. Const. art. V, § 2; *State v. Dunn,* 615 S.W.2d 543, 550[15] (Mo.App. 1981). We believe *Grover, Flick* and *Lucitt* are controlling. Accordingly, Jacqueline's appeal must be dismissed.

In reaching this conclusion, we have not overlooked a line of cases asserting there is a right to appeal from any final judgment or order of the probate court in all cases not expressly prohibited by law. This line includes *Pope,* supra, 469 S.W.2d 841, along with *In re Scott's Estate,* 237 Mo.App. 1260, 173 S.W.2d 115 (Mo.App.1943); *In re McMenamy's Guardianship,* 307 Mo. 98, 270 S.W. 662 (banc 1925), and *Coleman v. Farrar,* 112 Mo. 54, 20 S.W. 441 (banc 1892). All of these cases cite § 478.070(4), RSMo 1969,[19] or its precursors, as authority. That statute was repealed by Laws 1978, p. 696, effective January 2, 1979. Since that date Missouri has had no comparable statute. Thus, the foundation of this line of cases, to the extent that it rests on the repealed statute, has been undermined. Moreover, none of the cases in this line involved an appeal from an order granting or denying an application for letters of administration in a decedent's estate.

We have also studied *In re Estate of Erwin,* 611 S.W.2d 564 (Mo.App.1981), holding that an appeal lies from an order refusing to remove or revoke the appointment of an administrator. 611 S.W.2d at 567[6]. The appeal here is not from that type order.

**15.** Footnote 4, supra.

**16.** Footnote 5, supra.

**17.** § 472.160.1, RSMo 1978, as amended by Laws 1980, p. 452, provides: "Any interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court in any of the following cases:

(1) On the allowance of any claim against an estate exceeding one hundred dollars;

(2) On all settlements of the personal representative;

(3) On all apportionments among creditors, legatees or distributees;

(4) On all orders directing the payment of legacies, making distribution or making allowances to the surviving spouse or unmarried minor children;

(5) On all orders for the sale of assets of the probate estate;

(6) On all orders for the sale of real estate;

(7) On judgments for waste;

(8) On proceedings to recover balances escheated to the state;

(9) On all orders revoking letters testamentary or of administration;

(10) On orders making allowances for the expenses of administration;

(11) On orders for the specific execution of contracts;

(12) On orders compelling legatees and distributees to refund;

(13) On all orders denying any of the foregoing requested actions;

(14) In all other cases where there is a final order or judgment of the probate division of the circuit court under this code except orders admitting to or rejecting wills from probate."

**18.** Footnote 6, supra.

**19.** Footnote 13, supra.

Finally, we have considered whether the order from which Jacqueline appeals is appealable under § 512.020, RSMo 1978, independent of § 472.160, RSMo 1978, as amended by Laws 1980, p. 452. § 512.020 antedated the changes of January 2, 1979,[20] and we are aware of no appellate decision since that date dealing with the relationship between § 512.020 and § 472.160. We need not, however, examine that relationship here because the pertinent provision of § 512.020 [21] is indistinguishable from the pertinent provision of § 472.160 which, as noted earlier, is virtually identical with the statutory provision in *Grover* that was held not to authorize an appeal there.

In sum, we have a narrow issue ruled by old, but apparently viable, authority to which we are required to adhere. *State ex rel. Board of Public Utilities v. Crow,* 592 S.W.2d 285, 288[3] (Mo.App.1979). Whether the law should be changed is not for us to decide.

We realize our holding leaves the parties where we find them. As their dispute proceeds, they may find *In re Estate of Fedina,* 491 S.W.2d 552 (Mo.1973), *Younghaus v. Lakey,* 559 S.W.2d 30 (Mo.App.1977), *N.R. v. R.J.D.,* 588 S.W.2d 76 (Mo.App.1979), *Webb v. First National Bank & Trust Co. of Joplin,* 602 S.W.2d 780 (Mo.App.1980), and *Matter of the Estate of Cannon,* 622 S.W.2d 752 (Mo.App.1981), helpful.

Appeal dismissed.

GREENE, C.J., and FLANIGAN and MAUS, JJ., concur.

**20.** Footnotes 4 and 5 supra.

**21.** § 512.020, RSMo 1978, provides, in pertinent part: "Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction ... from any final judgment in the case...."